79 So.2d 869

## ARKANSAS FUEL OIL COMPANY

v.

## Bill GARY et al.

In re Leslie P. Beard and Mrs. Mary M. Cloney Applying for Certiorari, Parish of Caddo.

No. 41755.

March 21, 1955.

Rehearing Denied April 25, 1955.

Dimick & Hamilton, Tucker, Bronson & Martin, Shreveport, for applicants.

Cook, Clark & Egan, Shreveport, for respondents.

HAMITER, Justice.

The dispute in this concursus proceeding concerns 35/512ths of the oil (more particularly its value) produced from a well situated in the SE¼ of Section 1, Township 20 North, Range 16 West, Caddo Parish, known as Mills Tooke-Packard "A" well. The disputed interest is claimed on the one hand by Leslie P. Beard and Mrs. Mary M. Cloney (they being referred to hereinafter as Beard et al.) and on the other hand by Rowland Savage, John

Graham Savage and Bill Gary (hereafter designated as Savage et al.).

The district court resolved the conflict in favor of Beard et al. The Court of Appeal decreed a reversal of the judgment and awarded the interest to Savage et al. See 70 So.2d 144. We granted certiorari.

The pertinent facts of the cause, as disclosed by a stipulation of counsel and by annexed documents, are as hereinafter set forth.

On November 13, 1947 one I. R. Packard granted in favor of Mills Tooke Properties, Inc. (hereafter called Tooke, Inc.) an oil, gas and mineral lease on his small tract of land of approximately 71/100 acres, located in the Village, of Oil City (Caddo Parish), known as the Packard strip, and bounded on the east by the SE¼ of SE¼ of Section 1, Township 20 North, Range 16 West. Under that lease, and on the Packard strip, the lessee drilled and completed the Mills Tooke-Packard "A" well.

On March 24, 1948 Savage et al. sued to have themselves recognized as the owners of the oil, gas and other minerals in and to the above mentioned SE¼ of SE¼ of Section 1, particularly as owners of the Mills Tooke-Packard "A" well, they citing as defendants I. R. Packard, Tooke, Inc., and others (not important to this consideration). The purpose of such suit, admittedly, was to have the court decree that the Packard strip (on which the well is located) lies in the said SE¼ of SE¼ (wherein Savage et al. own all of the minerals) instead of in the adjoining SW¼ of SE¼, as claimed by Packard and Tooke, Inc.

In connection with the filing of that suit there was recorded in the mortgage records of Caddo Parish a notice of lis pendens reciting: "Notice is hereby given that * * * a suit was commenced * * * which suit is now pending; that the object of said suit is to have plaintiffs recognized as the owners of all oil, gas and other minerals in and under Fractional S.E.¼ of S.E.¼ of Section One, * * * and particularly that certain oil well known as Mills Tooke Properties-Packard No. 1, *located thereon.* (Italics ours.)

Between May 30, 1948 and October 1, 1948, while such suit was pending in the district court, Tooke, Inc. sold and assigned unto Beard et al. overriding royalties in and to the Tooke, Inc.-Packard lease, the several sales aggregating the 35/512ths interest in dispute here. Beard et al. were never cited to appear in said suit, and on the dates of acquisition of their respective royalties they had no actual knowledge of it or of the notice of lis pendens.

The district court, in said suit, held that the Packard strip was in the SW¼ of SE¼ of Section 1, and that, therefore, Savage et al. had no interest in it or in the Tooke, Inc. lease granted by Packard.

On May 29, 1950 this court, on an appeal, rendered a judgment decreeing that the Packard strip lay in the $SE\frac{1}{4}$ of $SE\frac{1}{4}$ of Section 1 and, hence, the minerals in and to it were owned by Savage et al. Further, the court ordered the defendants in such suit to make a full and complete accounting unto Savage et al. of the oil they had produced, reserving to them the right to recover in a separate proceeding $13,015.20, being the amount expended in drilling the well (the drilling having been in good faith).

Tooke, Inc., Packard, and other defendants applied for a rehearing. It was granted; and, eventually, it resulted in a setting aside of our original judgment. On the rehearing we held that the Packard strip, together with the well located thereon, is in the $SW\frac{1}{4}$ of $SE\frac{1}{4}$, and that the mineral rights thereto are owned by Packard. Accordingly, the judgment of the district court dismissing the suit of Savage et al. was affirmed. See Savage v. Packard, 218 La. 637, 50 So.2d 298.

Meanwhile, during the period in which the case was pending on applications for a rehearing, Tooke, Inc. and another defendant (not Packard) entered into a written agreement with Savage et al. in which they made mention of their having filed an application for a rehearing and stipulated that they "nonetheless now acquiesce in said judgment of May 29, 1950, and coincidentally with the signing of these presents are withdrawing said application for rehearing, and desire to be governed by said judgment of May 29, 1950."

Further, in such instrument, Savage et al. agreed to reimburse Tooke, Inc. the $13,015.20 referred to in the judgment; and the latter, along with its subscribing codefendant, acknowledged that "they have no further interest in the property involved in said litigation, the producing well located thereon and the equipment now situated on said property and used in connection therewith and the oil heretofore and hereafter produced therefrom, hereby acknowledging that the plaintiff-appellants are the true owners thereof and entitled to undisputed possession thereof, insofar as they are concerned."

Packard, as aforestated, did not join in such agreement; he is still being paid his one-eighth royalty under the lease granted by him to Tooke, Inc.; and he was not cited in the instant concursus proceeding.

On these facts the Court of Appeal held in the present dispute that the effect of our first judgment in the previous litigation was to cancel the lease from Packard to Tooke, Inc. (it might be noted, incidentally, that the lease was not mentioned in such judgment); and that Tooke, Inc.'s acquiescence in that judgment rendered it final. The Court of Appeal further concluded that since the overriding royalties obtained by Beard et al. from Tooke, Inc. were mere appendages of the lease, and

could not exist independently of it, they terminated with the lease's extinguishment.

In this court Savage et al. continue to urge (as the Court of Appeal held) that the overriding royalty interests of Beard et al. were dependent upon the lease of Tooke, Inc., and that such lease, along with the overriding royalties, passed out of legal existence when Tooke, Inc. acquiesced in this court's judgment of May 29, 1950. Additionally, they maintain that the recorded notice of lis pendens prevented Beard et al. from acquiring any rights prior to such acquiescence.

To be determined herein, therefore, is the effect (1) of the acquiescence by Tooke, Inc. in this court's original judgment, together with its execution of the described written contract with Savage et al., and (2) of the notice of lis pendens on the overriding royalties purchased by Beard et al.

With respect to the matter of acquiescence Savage et al. argue: " * * * The controversy between the respondents here [Savage et al.] and the Tooke Company was over the validity of the oil and gas lease which the Tooke Company held. That controversy could have been the subject matter of a separate lawsuit. It was a separable controversy from the controversy between the respondents and Packard, for example. Had they elected, the respondents could have sued the Tooke Company alone, in which case the entire suit of Savage et al. vs. Packard et al. would have ended when the Tooke Company withdrew its application for rehearing in this court. * * *" (Brackets ours.)

But this argument overlooks the important factors that the real issue in the former proceeding concerned the ownership of the minerals in and to the Packard strip, and Tooke, Inc. was cited as a defendant therein only because it held from Packard an oil and gas lease on that strip. Whether or not the lease was valid was incidental or secondary to such real issue. The validity thereof, in other words, depended merely and exclusively on ownership of the minerals by Packard who was the principal defendant and the lessor of Tooke, Inc. Had Packard not owned the minerals the lease would have been ineffective. However, he was decreed to be and recognized as such owner by the final judgment of this court; consequently, the lease that he executed remained valid and binding. Tooke, Inc.'s withdrawal of the application for a rehearing had no more effect on the validity of such lease than would have resulted had it elected not to defend the suit initially, taking its chances on the lessor's being able to maintain his title.

That the real issue in the former proceeding concerned ownership of the minerals in and to the Packard strip, and that the matter of acquiescence in the original judgment was of no importance in deter-

mining that issue, is indicated by the following language used by this court in its decision on the rehearing: "While it is true that where one fails to apply for a rehearing or withdraws his application for a rehearing once applied for, judgment as to that party becomes final after the required time for application for a rehearing has expired, this does not mean that there remains only a 3/16th mineral interest involved in this suit as contended by plaintiffs. Counsel has obviously overlooked the fact that the party defendant who did not apply for a rehearing, and the two who withdrew their application after filing, are not owners of any part of the realty involved, nor of any of the mineral rights. * * *"

██ Since the lease was not cancelled by the failure of Tooke, Inc. to persist in its application for a rehearing, it follows that the only rights which Savage et al. have in and to Mills Tooke-Packard "A" well and production therefrom are those which they obtained by virtue of the above mentioned written agreement with Tooke, Inc. That document, particularly the language quoted above, discloses that it amounted to nothing more than a quitclaim by Tooke, Inc. to Savage et al. of whatever interest it had in the Packard property. And that interest was principally its lease rights thereto, less such portion thereof as had been disposed of previously. After and as a result of this agreement Savage

et al., in other words, owned the lease (and well), subject to overriding royalties that had been validly sold by Tooke, Inc.

██ This brings us to the second question: What effect did the notice of lis pendens have on the overriding royalties purchased by Beard et al.? Admittedly the Beard et al. purchases were consummated, and the deeds evidencing them recorded, prior to the agreement between Tooke, Inc. and Savage et al., although subsequent to the filing of the former suit. But the notice, in our opinion, was not effective, for the overriding royalties purchased by Beard et al. were described as being, and in fact were, in and to a lease on property located in the $SW\frac{1}{4}$ of $SE\frac{1}{4}$ of Section 1; whereas such notice showed that there was a dispute only over property lying in the $SE\frac{1}{4}$ of $SE\frac{1}{4}$ of Section 1.

The notice of lis pendens would have afforded protection to Savage et al. in the event the $SE\frac{1}{4}$ of $SE\frac{1}{4}$ of Section 1 contained the Packard strip. Had it ultimately been determined that the strip was in that quarter-quarter section no intermediate sales or transfers could have affected the rights of Savage et al. However, when this court found as a fact and held finally that the property lay in the $SW\frac{1}{4}$ of $SE\frac{1}{4}$ the notice served no good purpose.

For the reasons assigned the judgment of the Court of Appeal is annulled and set

aside and the judgment of the district court is reinstated and made the decree of this court. Costs of the Court of Appeal and of this court shall be paid by Rowland Savage, John Graham Savage and Bill Gary.