TATE, Judge.
These proceedings are an aftermath of our decision in Fontenot v. Sunray Mid-Continent Oil Company, La.App., 197 So.2d 715. The trial court had cancelled two mineral leases in their entirety. On appeal, we amended so as to except from the cancellation the plaintiff Fontenot’s mineral interest in two specified sands.
The question at issue in the present proceeding is whether our amendment is also effective as to three overriding royalty owners. The latter had been made defendants in the original proceedings; but they had failed to appeal from the original trial court decree cancelling the leases and ordering the defendants to pay the plaintiff the value of their share of all oil and gas produced from these leases after December 1, 1960.
*925 After our amendment of the appeal, the plaintiffs[1] filed a rule upon Sun (the mineral lessee) and the non-appealing overriding royalty owners to require them to account for mineral production under the terms of the original judgment. These defendants now appeal from the trial court judgment holding that the overriding royalty owners’ failure to appeal the original judgment (which had ordered them to pay the plaintiff the value of these royalties) has made such judgment res judicata against their present claim that they still own them. We affirm.
(1)
As more fully set forth in our decision on the original appeal, 197 So.2d 715, the plaintiff brought suit to cancel two mineral leases, insofar as they affected his JÍ4th of pith mineral interest in the oil and gas produced from the leased lands. His original petition had joined the mineral lessee and all royalty owners. Among these latter were the present defendants, Riddle, Geddie, and Hedley, who owned an interest in the ^nd overriding royalty rights carved out of the lessee’s share of the production under the two leases.[2]
The original trial court decree cancelled both leases in their entirety as of December 1, 1960. The trial court judgment further decreed that the mineral lessees and the overriding royalty owners (including Riddle, Geddie, and Hedley), must “render an accounting to plaintiff [Fontenot] for %4th of %ths of the oil and gas produced from said leases from December 1, 1960, and pay to him the value thereof, together with legal interest thereon from date of judicial demand and thereafter from dates of production.” (Italics ours.)
The mineral lessee and most of the overriding royalty owners appealed from such adverse judgment. However, Riddle, Geddie, and Hedley (present defendants) did not do so. But they now claim, for reasons indicated below, that the partially successful appeal by the other defendants nevertheless restored to them the share of the mineral production now sought by them.
On such appeal by the other defendants, this court amended the trial court decree so as, pertinently: (a) to change the date of cancellation to April 9, 1963 (instead of December 1, 1960); and (b) to except from the cancellation the plaintiff’s mineral interest in the NB-1 and NS-1 sands.
The effect of this amendment, at least so far as the appealing defendants are concerned, was: (1) to restore to such defendants their interest in the production accruing from the MT-1 and MT-4 sands from December 1, 1960 to April 9, 1963; and (2) to restore to them their entire interest in the production from the NB-1 and NS-1 sands. The non-appealing overriding royalty owners (Riddle, Geddie, and Hedley, the present defendants) claim that the appeal of such other defendants likewise restored to themselves a similar interest in the production from these sands.
The trial court rejected their claim. It held, correctly in our opinion, that Riddle, Geddie, and Hedley had lost whatever right they had to such production because of their failure to appeal the adverse judgment ordering them to account and pay the plaintiff Fontenot the value of these minerals to the plaintiff. Under our long established jurisprudence, a person failing to appeal from a judgment is bound by that judgment, even though it be re *926 versed or changed as a result of an appeal by other parties. Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138; Succession of Manthey, 159 La. 743, 106 So. 289; Leger v. Lisonbee, La.App.3d Cir., 207 So.2d 563.
(2)
The defendants, however, suggest that the present case falls under an exception to this general rule. They suggest that the overriding royalty rights of the non-appealing defendants are so interwoven with the lease as to be inseparable, so that a partial reversal of the trial court’s cancellation of these leases on the leases on the previous appeal must inure to their benefit.
In support of this contention they rely upon Jackson v. Gulf Refining Co., 201 La. 721, 10 So.2d 593 and Arkansas Fuel Oil Co. v. Gary, 227 La. 524, 79 So.2d 869, see also, La.App.2d Cir., 70 So.2d 144. See 5B C.J.S. “Appeal and Error” § 1952.
These decisions involve distinguishable circumstances. In Arkansas Fuel Oil, for instance, the royalty owners were not parties to the original judgment.
Likewise, in Jackson the court held that the owners were not necessary parties to that petitory action and thus obliged to appeal. In the present case, however, the original Fontenot suit by the plaintiff was not only to cancel the lease but also to have opposing mineral and royalty owners account for the proceeds; and the opposing royalty owners (including Riddle, Geddie, and Hedley) were, at the very least, necessary parties. See Humble Oil and Refining Co. v. Jones, 241 La. 661, 130 So.2d 408. Furthermore, in Jackson, unlike the present, the original trial court decree did not require the royalty owners to account and pay to the plaintiff the value of his interest in the minerals produced. Jackson v. United Gas Public Service Co., No. 72,914 (First District Court, Caddo Parish, La., 1931).
Like our trial brother, we are unable to see how Riddle, Geddie, and Hedley can escape from the finality of the earlier judgment, not appealed by them, which ordered them to account for and pay to the plaintiff the value of the royalties now sought. Simply stated, the lease upon which they base their right to draw royalties remains entirely cancelled, as to them, from December 1, 1960, even though as to the appealing defendants certain sands were excepted and the date of dissolution was changed.[3]
(3)
For similar reasons, we do not find merit to the alternative argument of the appellants that the overriding royalty, if can-celled by the failure to appeal, must revert to the mineral lessee. Such argument is based upon the principle of Wier v. Glassell, 216 La. 828, 44 So.2d 882 that the termination of a lease extinguishes an overriding royalty carved from that lease as an appendage to it.
In Wier, there was no earlier suit to which the overriding royalty owner way a party. The lessee simply ignored the earlier leases (to which the overriding royalty was an appendage) and executed new leases. The overriding royalty owner’s claim that his right attached to the land (and not merely to the earlier leases, now terminated) was rejected. The legal issue thus posed is thus not apposite to the present issue, which concerns the effect of a failure to appeal an earlier adverse judgment; for there was none at issue in Wier.
Further, the appellants incorrectly construe the effect of the present trial *927 court’s judgment as a “reversion”. It is the judgment of the trial court, from which, Riddle, Geddie, and Hedley did not appeal, that must now be enforced against them. That judgment did not merely declare that the leases out of which his royalty was carved were cancelled, but it also ordered the present overriding royalty owners to account to the plaintiff for their share of all mineral production received after December 1, 1960, That judgment is now res judicata, by reason of the defendant’s failure to appeal from it.

Decree

For the foregoing reasons, we affirm the judgment of the trial court. However, through inadvertence it decreed that the defendants must account and pay for the production of the MT-1 and MT-4 sands from December 1, 1960 to date, whereas the petition had demanded such relief only for the production from December 1, 1960 to April 9, 1963.[4] The decree is amended to conform to the prayer as to such sands. The defendants-appellants are to pay the costs of this appeal.
Amended and affirmed.

. Following institution of the original suit, the plaintiff Fontenot had transferred part of his royalty interest to two individuals. They join him as co-plaintiffs in the present proceedings.

. In one case, the %2nd overriding royalty was reserved in the sale to Sun by the original mineral lessee. In the other ease, Sun directly granted the %2nd royalty interest from the mineral lessee’s share of production. In both instances, of course, the overriding royalty was carved out of the lessee’s %th mineral interest under the leases. We do not regard the difference in the origin of these overriding royalty interests as material to the decision of this case.

. Similarly, the plaintiff Fontenot obtained cancellation of the lease as to him, even though it remains effective as to his co-owners succeeding to the right to receive the remaining ^¿th of the royalty payable to the lessor’s interest.

. The petition alleges that the defendants had satisfactorily accounted for all production from the MT-1 and MT-4 sands, except as to the interests of Riddle, Geddie, and Hedley for the period from December 1, 1960 to April 9, 1963; the lease’s cancellation being effective as to such sands from this latter date as to all lessee defendants, including those that did appeal in the earlier proceedings. It further alleges that the defendants had never accounted for the interest of Riddle, Geddie, and Hedley from production of the NB-1 and NS-1 sands; the trial court ordered the defendants to do so from December 1, 1960 to date, and this portion of the decree is affirmed.