243 So.2d 783 (1971)
257 La. 642
Wallace FONTENOT
v.
SUN OIL COMPANY (formerly Sunray Mid-Continent Oil Co.) et al.
No. 50470.
Supreme Court of Louisiana.
January 18, 1971.
Rehearing Denied February 24, 1971.
Petitjean & Petitjean, Martin Petitjean, II, Rayne, Huey H. Breaux, Lafayette, for plaintiff-respondent.
Liskow & Lewis, Austin W. Lewis, New Orleans, Tom D. Hardeman, Lafayette, Pugh, Buatt, Landry & Pugh, Lawrence G. Pugh, Jr., Crowley, for defendants-applicants.
McCALEB, Chief Justice.
We granted certiorari to review the judgment of the Court of Appeal in these proceedings decreeing that three overriding royalty owners must account to the landowner for their share of production obtained by their mineral lessee by reason of their failure to appeal from a judgment of the district court in a previous suit ordering cancellation of the mineral leases affecting the property, notwithstanding that a reversal of this judgment was obtained on appeal by the mineral lessees and other overriding royalty owners.
This is a sequel to a suit brought by the present plaintiff, as landowner, for cancellation *784 of two leases[1] as to his undivided 1/14th mineral interest on tracts of land located in Acadia Parish which was acquired through donations and inheritance. The former suit sought cancellation of the leases on the subject property, an accounting, and attorneys' fees for alleged failure of the mineral lessee, Sun Oil Company (formerly Sunray Mid-Continent Oil Company) to pay royalties due. Production royalty had been paid prior to demand on the NB-1 and NS-1 sands unitized in the Northwest Branch Field Unit, but Sun withheld payments of royalties due plaintiff for production from the MT-1 and MT-4 sands of another unit. Cancellation was sought by plaintiff both as to the MT-1 and MT-4 sands, and the NB-1 and NS-1 sands.
Named as defendants in this prior suit were Sun Oil Co. and six overriding royalty owners.[2] Three of these royalty owners, Riddle, Geddie and Hedley (defendants in the present litigation) were absentees and a curator ad hoc was appointed to represent them. After a hearing, the district court ordered cancellation of the leases in their entirety and further ordered Sunray (the predecessor of Sun Oil Co.) and the other defendants to account for and pay to plaintiff 1/14th of 7/8ths of the value of the oil and gas produced from these two leases from December 1, 1960. Attorneys' fees in the amount of $4,000 were allowed under the provisions of R.S. 30:102.
An appeal was taken by Sun Oil Co. and three of the overriding royalty owners, but Riddle, Geddie and Hedley did not appeal. The Court of Appeal, Third Circuit, amended the judgment in the following respects: it excepted from the decree of lease cancellation the plaintiff's mineral interest in the NB-1 and NS-1 sands; it decreed the date of partial cancellation of the lease (as to the MT-1 and MT-4 sands) to be as of April 9, 1963 (instead of December 1, 1960); and it denied the plaintiff's claim for attorneys' fees. See Fontenot v. Sunray Mid-Continent Oil Company, La.App., 197 So.2d 715. This Court denied certiorari, 250 La. 898, 199 So.2d 915.
Subsequently, a dispute arose as to certain aspects of the accounting and plaintiff commenced the instant action by rule to compel an accounting from Sun Oil and the three nonappealing overriding royalty owners, Riddle, Geddie and Hedley, for production from the leases from December 1, 1960, in accordance with the district court judgment of June 15, 1966 in the former suit. It is averred by plaintiff in this rule for an accounting that, as to the MT-1 and MT-4 sand units, Sun Oil Co. has satisfactorily accounted for all funds concerned with the operation and production thereof except as to the interest of Riddle, Geddie and Hedley from December 1, 1960 to April 9, 1963; that in spite of demand upon Sun plaintiff has never been rendered an accounting of the production from the NB-1 and NS-1 sands, nor of the interests of Riddle, Geddie and Hedley therein in production from these units from December 1, 1960. It is also averred that these royalty owners have not tendered any part of the $4,000 attorneys' fees awarded by the district court for which said amount these parties were cast, in solido with the other defendants.
Sun Oil Company answered admitting that it had not accounted to plaintiff for the interests of Riddle, Geddie and Hedley *785 from December 1, 1960 to April 9, 1963, averring that no such accounting is due to plaintiff; that irrespective of the failure of these named defendants to appeal the prior district court judgment decreeing full cancellation of the two leases, the decree of the Court of Appeal as amended, effectively extinguished in its entirety the plaintiff's claim for which he now seeks an accounting.
It is the position of Sun that defendants, Riddle, Geddie and Hedley, as owners of limited overriding royalty rights, were nominal parties only to the litigation and were not obliged to appeal from the lower court's judgment in order to have the benefit of the modification and partial reversal of that judgment on the appeal taken by Sun Oil Co., as owner of the leases, and that, therefore, the judgment of the Court of Appeal inures fully to the benefit of these defendants. Sun further avers in the alternative that, if it should be held that the failure of the defendants to appeal from the original judgment of the district court of June 15, 1966 resulted in the cancellation of the overriding royalty rights, such cancellation did not inure to the benefit of plaintiff landowner, but rather to it as the owner of the mineral leases affected by the overriding royalty rights of these defendants.
The district court rejected the contentions of defendants and ordered the accounting as prayed for against Sun Oil and the three defendants who failed to appeal. Under this judgment it was decreed that defendants account for production from the MT-1 and MT-4 sands from December 1, 1960 to date. This decree was corrected by the Court of Appeal to conform with the relief demanded, i. e., accounting as to the MT-1 and MT-4 sands from December 1, 1960 to April 9, 1963. In other respects the Court of Appeal affirmed that portion of the district court judgment which ordered the defendants to account for the interest of these overriding royalty owners from production of the NB-1 and NS-1 sands from the Northwest Field Branch Unit from December 1, 1960 to date.
The principal and, in fact, the only issue posed for our consideration is whether defendant overriding royalty owners had to appeal from the former district court judgment decreeing cancellation of the two leases, in order to maintain their interests in effect notwithstanding the partial reversal of that judgment on appeal by other parties. It is the contention of defendants (relators herein) that the holding of the Court of Appeal is in conflict with the opinions of this Court in Jackson v. Gulf Refining Co., 201 La. 721, 10 So.2d 593; Wier v. Glassell, 216 La. 828, 44 So.2d 882; and Arkansas Fuel Oil Company v. Gary, 227 La. 524, 79 So.2d 869, for the reason that it fails to recognize that an overriding royalty interest is merely an appendage to a mineral lease and, hence, under the well-established concept of such a right, the termination of an overriding royalty interest for any reason, including the failure to appeal from an adverse judgment, can only inure to the benefit of the mineral lessee.
Simply stated, plaintiff's position is that the overriding royalty owners were not nominal parties, but in truth and fact indispensable parties under Articles 641 and 642 CCP because their interests in the leases were directly affected and their failure to appeal has made the judgment res judicata as to them. Plaintiff relies principally upon Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138; and Humble Oil and Refining Company v. Jones, 241 La. 661, 130 So.2d 408. In the latter case, plaintiff contends, this Court held that royalty owners whose rights would be directly affected by an adjudication must be joined and are indispensable parties.
Defendants declare that two decisions of this Court (Jackson v. Gulf Refining Co. and Arkansas Fuel Oil Company v. Gary) fully support their position that in the circumstances presented here, an appeal by the mineral lessee, or holder of the principal *786 right, preserves the accessory rights of the nonappealing overriding royalty owners, urging that this is a special exception to res judicata as stated in 5B C.J.S. Appeal & Error, § 1952.
We think the contentions of the defendants are well founded. The previous suit brought by plaintiff sought primarily the cancellation of mineral leases allegedly due to the lessee's failure to perform the contractual obligations imposed upon it by said leases. As an adjunct to this principal demand, plaintiff joined six persons holding overriding royalty contracts carved out of the leases by the mineral lessee. These overriding royalty interests were appendages to the leases (see Wier v. Glassell, 216 La. 828, 44 So.2d 882) and were effective as accessory rights, so long as the leases were in existence. There was no privity of contract between plaintiff-landowner and the overriding royalty owners. However, if the leases were judicially cancelled as a result of a breach by the lessee, the owners of overriding royalties would have lost these accessory rights and, unquestionably, would have been bound to account to the plaintiff for the production for which they had received payment from the time the leases had been cancelled.
Accordingly, since plaintiff by his original action sought a cancellation of the leases, it was incidental to his main demand for him to seek an accounting from those holding overriding royalty rights granted by the mineral lessee. Joinder of these parties as defendants was proper, although it was not essential to the establishment of plaintiff's cause of action for the cancellation of the leases. The original judgment of the lower court which granted an accounting to plaintiff for the production the royalty owners had received was necessarily premised and, indeed, conditional on the court's finding that plaintiff was entitled to judgment cancelling the leases as prayed for in his petition, for this accessory demand could not be granted otherwise. It follows then that, when the judgment cancelling the leases was modified and partially reversed on appeal (see 197 So.2d 715), the incidental and accessory judgment for an accounting by the holders of overriding royalties necessarily became ineffective so as to exclude therefrom such sands which were eliminated by the final decree on appeal.
This is a natural consequence of the judgment on appeal and it matters not, either from a common sense or legal standpoint, if any of the holders of overriding royalties appealed from the adverse decision of the district court so long as ultimately the judgment was set aside at the behest of the lessee. For, since the order for an accounting was dependent on the judgment of cancellation for its vitality, any modification and amendment thereof was just as effective as to those who did not join in the appeal. That this is the well-settled law of this country and in accordance with the jurisprudence of this Court is well stated in 5B C.J.S. Appeal and Error § 1952, as follows:
"A reversal is binding on the parties to the suit, but does not control the interest of parties who did not join, or were not made parties, to the appeal, unless their rights and liabilities and those of the parties appealing are so interwoven and dependent as to be inseparable, in which case a reversal as to one operates as a reversal as to all." [3] (Italics ours)
In support of this exception to the general rule that a party cast must appeal in order to benefit by a reversal, the above-quoted text cites authorities from California, Connecticut, Illinois, Kentucky, Louisiana (Jackson v. Gulf Refining Co., 201 La. 721, 10 So.2d 593, certiorari dismissed 318 *787 U.S. 796, 63 S.Ct. 770, 87 L.Ed. 1160), Maryland, Missouri, Nevada, New York, North Carolina, Oklahoma, Texas, Utah, Washington and Wisconsin.
Counsel for plaintiff profess that our law is different because, under Articles 641 and 642 CCP, the nonappealing defendant overriding royalty owners were necessary and indeed indispensable parties and, therefore, their failure to appeal when cast by the district court rendered the matter res judicata as to them.
We find no substance in this postulation for, were we to generously assume that the defendant overriding royalty owners in the present proceeding were necessary or even indispensable parties, which we doubt, we would encounter considerable difficulty in perceiving how this circumstance could have any effect on the question before us, which iswhether a party cast on an accessory or incidental matter, inseparable from the principal demand, is entitled to rely on a reversal or a modification of a judgment on appeal when the basis for the decree against him on the incidental demand is necessarily dependent on a primary cause existing between the party plaintiff and another defendant.
The case of Jackson v. Gulf Refining Co., supra, is on all fours in principle with the matter at hand. There, the plaintiffs sued certain landowners (the Spearmans) for title in a petitory action. Two owners of mineral interests, North Central Texas Oil Company and Southland Royalty Company, who had acquired their rights from the Spearmans were also named as defendants. The judgment of the lower court recognized that plaintiffs as owners had a certain interest in the land. The two mineral owners failed to appeal from that judgment, but the landowner from whom they obtained their mineral interests did appeal and secured a complete reversal of the judgment, the Court holding that plaintiffs owned no interest whatever in the land. Thereafter, as here plaintiffs proceeded in a separate suit against the two mineral owners to have the original judgment of the lower court recognized as against the mineral interests held by these nonappealing defendants. Hence, the issue was squarely presented respecting the effect of an appellate reversal obtained by the owners of the principal right (the Spearmans) on the interest of the nonappealing owners of the ancillary rights (the mineral interests). The Court, in an opinion by Chief Justice O'Niell, rejected plaintiffs' claims on several grounds, one of which was that the two mineral interest owners had no duty to appeal in order to have the benefit of the reversal of the judgment obtained by the landowners. The Court stated:

"* * * the North Central Texas Oil Company and the Southland Royalty Company would not have been obliged to appeal from the judgment in order to have the benefit of the annulment of the judgment on the appeal by the Spearmans. In that respect, the North Central Texas Oil Company and the Southland Royalty Company were in the situation of an owner of a servitude, or like a holder of a mortgage, on the land. The owner of a servitude or of a mortgage on a tract of land is not a necessary party to a petitory action brought against the owner of the land, and is not obliged to appeal from a judgment against the owner of the land, in order to protect his, the servitude owner's or mortgage owner's, right to have the benefit of a reversal of the judgment on an appeal by the owner of the land."[4] (Italics ours)
*788 Arkansas Fuel Oil Company v. Gary, supra, is also apposite to the case at bar. In that matter there was a dispute as to the ownership of a mineral interest. One of the claimants sued the other to establish his title thereto and joined as a defendant the other claimant's mineral lessee. Judgment was rendered in favor of defendant, the lower court holding that he owned the minerals and that plaintiff had no right to them or to the production from the lease granted by defendant. The judgment was reversed on appeal, this Court holding on first hearing that plaintiff owned the mineral interest and this in effect nullified the lease granted by defendant.
Both the mineral owner and the lessee applied for a rehearing. However, the lessee thereafter entered into an agreement with the plaintiff under which he withdrew his application for rehearing and acquiesced in the first judgment of this Court. A rehearing was however granted to the defendant-lessor and the judgment on first hearing was reversed, the Court finally holding that defendant-lessor was the owner of the disputed mineral interest.
Subsequently, one Leslie Beard, who had purchased an override from the lessee while the suit was pending, sought to have his interest in production recognized. In a concursus proceeding convoked by the purchaser of the oil, this Court held that the lease and the override to which it was appended were valid, despite the failure of the lessee to pursue its application for a rehearing. It was pointed out by the Court in its opinion that the principal purpose of the suit was to determine ownership of the mineral interests and that whether or not the lease was valid was "* * * incidental or secondary to such real issue. The validity thereof, in other words, depended merely and exclusively on ownership of the minerals by Packard, who was the principal defendant and the lessor of Tooke, Inc. Had Packard not owned the minerals the lease would have been ineffective. However, he was decreed to be and recognized as such owner by the final judgment of this court; consequently, the lease that he executed remained valid and binding. Tooke, Inc.'s withdrawal of the application for a rehearing had no more effect on the validity of such lease than would have resulted had it elected not to defend the suit initially, taking its chances on the lessor's being able to maintain his title."
The analogy of the Gary case to the instant one is apparent, yet the Court of Appeal in its opinion in this matter attempts to distinguish the Gary case on the ground that the overriding royalty owner was not a party to the original suit. But that circumstance (if correct, inasmuch as Beard had acquired his interest after suit was filed and a notice of lis pendens recorded) played no part whatsoever in this Court's decision. On the contrary, as we have hereinabove shown, the Court's decision was grounded entirely on the premise that the real issue in the former proceeding concerned ownership of the minerals in and to the Packard strip "* * * and that the matter of acquiescence in the original judgment was of no importance in determining that issue * * *."
For the reasons assigned, the judgment of the Court of Appeal which amended and affirmed the judgment of the trial court is annulled and reversed, and it is now ordered that there be judgment herein dismissing plaintiff's rule for an accounting at his costs.
TATE, J., recused, having participated in Court of Appeal consideration.
BARHAM, Justice (dissenting).
I wish that I were able to concur in the result in this case, but I can find no legal *789 support for that result. The judgment of the trial court against the three royalty owners who failed to appeal is res judicata as to them. For the reasons assigned by the Court of Appeal in Fontenot v. Sun Oil Co., 240 So.2d 924 (La.App.3rd Cir. 1970), I respectfully dissent.
SUMMERS, Justice (dissenting).
Judgment has been rendered dismissing plaintiff's rule for an accounting from three overriding royalty owners, Riddle, Geddie and Hedley. In my view the Court should have compelled the accounting. Judgment had been rendered in a predecessor suit (197 So.2d 715) decreeing a cancellation of the leases to which these overriding royalties were an appendage. By that suit Riddle, Geddie and Hedley as overriding royalty owners were ordered to make an accounting to the landowner lessor, plaintiff here. Riddle, Geddie and Hedley did not appeal. However, their codefendant, the lessee of the leases to which their overriding royalties applied, did appeal; and the trial court judgment was reversed, reinstating the leases in part. (240 So.2d 924).
The question, as the majority states it, is whether the overriding royalty owners had to appeal from the district court judgment decreeing cancellation of the affected leases in order to be entitled to the benefit of the Court of Appeal judgment which reinstated these leases on appeal by the lessees.
Principally the majority bases its decision on the case of Jackson v. Gulf Refining Co., 201 La. 721, 10 So.2d 593 (1942), in which this Court held that the owner of a servitude on a tract of land is not a necessary party to a petitory action brought against the owner of the land; therefore, he is not obliged to appeal from a judgment invalidating the landowner's title in order to protect histhe servitude owner'sright to have the benefit of an appeal by the landowner, which results in a reversal reinstating the landowner's title.
The distinction between the Jackson Case and the case at bar is evident: the Jackson decision was predicated upon the premise that the servitude owners were not necessary parties to the petitory action involving title to the land and, therefore, the servitude owner need not appeal to benefit by a reversal if the title to the land owing the servitude was maintained on appeal. The Jackson Case, decided in 1942, cannot stand as authority in the case at bar. That principle no longer obtains since enactment of the Code of Civil Procedure which became effective on January 1, 1961.
At this time, Article 642 of the Code of Civil Procedure defines necessary parties in these terms:
Necessary parties to an action are those whose interests in the subject matter are separable and would not be directly affected by the judgment if they were not before the court, but whose joinder would be necessary for a complete adjudication of the controversy.
An adjudication of an action may be made even if all necessary parties are not joined therein, but when timely objection is made to the nonjoinder of a necessary party the court shall require his joinder if he is subject to its jurisdiction.
According to the Preliminary Statement to Chapter 1, Title III of the Code of Civil Procedure, necessary parties are those whose interests in the subject matter of the action are separable, and whose absence would not prevent proper relief to the parties joined; but who should be joined, if feasible, to avoid a multiplicity of action and permit a complete adjudication of the controversy.
This statement of the rule, in my opinion, fits the facts of this case. Here the overriding royalty owners Riddle, Geddie and Hedley were joined as defendants in *790 the trial court, claims were asserted against them and their rights were adjudicated; in fact, they were ordered to make an accounting to the plaintiffs in that suit which they failed to do, and the present suit seeks to enforce that accounting. In my opinion Riddle, Geddie and Hedley were at least necessary parties,[1] and their failure to appeal makes the issues adjudicated in the suit to which they were parties final insofar as they are concerned. Any contrary position is inconsistent with Article 644 of the Code of Civil Procedure which declares that a necessary party who refuses or fails to join in and assert his rights in an action which he should join may be joined as a defendant and required to assert his rights or be precluded thereafter from asserting them.
In any event, once properly joined the parties should not now be able to say that they were not bound by the judgment.
To refuse to give final effect to the adjudication against the overriding royalty owners in this case would make the right to join necessary parties an empty gesture. This failure would, moreover, impair the force, effect and finality of judgments otherwise properly rendered according to law. La.Code Civ.P. Title VI, Judgments; La.Code Civ.P. arts. 2087 & 2123. For a judgment is the determination of the rights of the parties in an action. La. Code of Civ.P. art. 1841. Unless modified or reversed in a manner prescribed by law, such a judgment has the force and effect of a thing adjudged.
Thing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal. (La.Civil Code art. 3556 subd. 31).
The result reached in the case at bar gives no effect to a proper judgment, never modified or appealed from. Thus, the Court's position is contrary to the fundamental, and elementary, rule that in order to avoid having the same question become the subject matter of litigation indefinitely renewed, that which has been once decided cannot again be brought before the court. Planiol, Traite Elementaire De Droit Civil, Part I, L.S.L.I. English translation, p. 241, No. 361.
No modification or reversal of the rights of the overriding royalty owners has or could take place here for no appeal has been taken from the judgment adjudicating those rights. La.Code Civ.P. art. 2133; Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138 (1968).
Since the overriding royalty owners did not appeal, I cannot agree that the decree of this Court can alter the rights adjudicated in the trial court and reinstate the overriding royalty rights in favor of Riddle, Geddie and Hedley, who, not having appealed, are not properly before this Court. Bradley v. Woodruff, 26 La.Ann. 299 (1894). All parties to the record who are interested in maintaining the judgment or reversing it must be made parties to the appeal from it. Modisette v. Hathaway, 147 La. 1035, 86 So. 485 (1920).
*791 The judgment of the Court of Appeal should be affirmed. I respectfully dissent.
SUMMERS, J., is of the opinion that a rehearing should be granted.
NOTES
[1] One lease was granted by Cyprien Fontenot to J. Aubrey Bonham, and the other lease was granted by Clemense T. Fontenot to A. E. Jordan.
[2] Originally named as defendants were the co-heirs of plaintiff, Fontenot, who own the remaining 13/14ths interest in the land. A motion for summary judgment as to these defendants was granted by the district court excepting from the cancellation that portion of the leased premises as to which the mineral lessee, Sun Oil Co., had fully performed all lease obligations. The suit was dismissed as to these co-owners but the motion was denied insofar as it pertained to Fontenot's claim.
[3] Cases such as Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138, relied on by plaintiff are inapplicable because they come squarely within the general rule that a party cast, who does not appeal, may not benefit by a change in the judgment in favor of or against other parties.
[4] The opinion of the Court of Appeal in this case attempts to distinguish the Jackson case from the case at bar on the ground that, here, the plaintiff sought not only a cancellation of the leases but also to have the opposing mineral and royalty owners account for the proceeds from production and, hence, the royalty owners were necessary parties. This resolution is not tenable for the reason, among others, that the Court in the Jackson case did not rest its decision on the ground that the mineral owners were not necessary parties but solely based its holding in clear language on the premise that the owners of the mineral interests were "not obliged to appeal from a judgment against the owner of the land" in order to protect their "* * * right to have the benefit of a reversal of the judgment on an appeal by the owner of the land."
[1] Although I am not prepared to express an opinion on the subject at this time, the overriding royalty owners may well be considered indispensable parties who are defined as:

Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.
No adjudication of the action can be made unless all indispensable parties are joined therein. (La.Code Civ.P. art. 641)
Horn v. Skelly Oil Co., 221 La. 626, 60 So.2d 65 (1952). As the case at bar demonstrates, the loss of the overriding royalties by the cancellation of the lease would seem to make Riddle, Geddie and Hedley indispensable parties.