348 So.2d 193 (1977)
CAMERON MEADOWS LAND COMPANY, Plaintiff-Appellant,
v.
Daniel R. BULLARD et al., Defendants-Appellees.
No. 6044.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1977.
Rehearings Denied August 1, 1977.
*194 Stockwell, Sievert, Viccellio, Clements & Shaddock by Oliver P. Stockwell, Lake Charles, for plaintiff-appellant.
Liskow & Lewis by William R. Pitts, New Orleans, for Mobil Oil Corp.
H. Ward Fontenot, Cameron, Farris Mitchell, Houston, Tex., John F. Reid, New Orleans, Camp, Carmouche, Palmer, Carwile & Barsh by A. J. Gray, III, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and ROGERS, JJ.
ROGERS, Judge.
This is an appeal by plaintiff, Cameron Meadows Land Company, hereinafter referred to as Cameron Meadows, from a Declaratory Judgment which decreed substantially as follows:
1) that this suit is a class action;
2) that certain partial releases of an oil, gas and mineral lease executed by Mobil Oil Corporation, Humble Oil & Refining Company and Exxon Corporation on certain lands of plaintiff are effective insofar as their interests are concerned, and that they no longer have any interest in the lands released by them;
3) that the released lands referred to above are free of any overriding royalty reserved in the conveyance by H. M. Henshaw to Vacuum (the predecessor of Mobil Oil Corporation) on April 1, 1927, of the lease granted by Cameron Meadows to H. M. Henshaw, dated March 21, 1927, including the overriding royalty owned by the two sole heirs of H. M. Henshaw, namely Harold M. Henshaw and Ashbel Henshaw, and certain other overriding royalty owners;
4) that the lands released by Mobil Oil Corporation, Humble Oil and Refining Company and Exxon Corporation are still subject to the oil, gas and mineral lease dated March 21, 1927, granted by Cameron Meadows to H. M. Henshaw, and is presently owned by the two children and sole heirs of H. M. Henshaw in equal proportion.
The defendants are Harold M. Henshaw, Ashbel B. Henshaw, heirs of H. M. Henshaw, Mobil Oil Corporation, hereinafter referred to as Mobil, Exxon Corporation, hereinafter referred to as Exxon, and numerous overriding royalty owners.
A motion was made by the Henshaw group to dismiss the appeal of Mobil, urging Mobil had no interest in the property involved in this litigation and further was not aggrieved by the judgment of the district court. We find no merit to the Henshaw argument as a reversal of the district court's judgment eliminates the possibility *195 of future litigation between Cameron Meadows and Mobil, and accordingly, we dismiss this action.
The case is somewhat complicated and since the trial judge summarized the facts and the issues of the case concisely, we adopt that portion of his Reasons for Judgment as follows:
"Plaintiff-landowner, Cameron Meadows Land Company, ("Cameron Meadows"), seeks judgment declaring that a portion of its land is no longer burdened by a mineral lease and certain overriding royalties.
By instrument dated March 21, 1927, Cameron Meadows Land Company, as landowner, granted a mineral lease, ("Cameron Meadows lease"), to H. M. Henshaw covering 11,540 acres in Cameron Parish, Louisiana.
As compared to modern leases, the Cameron Meadows lease is simple in its terms. It provided for a royalty of 7/64 for oil, 1/8 for casinghead gas, $200.00 per year for each natural gas well, and .50 cents per long ton of sulphur. The lease gave Henshaw the exclusive right to develop the minerals on the properties and included the right of assignment. The lease also provided that production of minerals in paying quantities from the property would maintain the lease in its entirety for as long as the minerals were so produced. The lease did not include a release clause, nor did it include the retention of any fixed acreage around a producing well in the event the lease was terminated.
On April 1, 1927, Henshaw executed an instrument purporting to "grant, sell, transfer, and assign," unto Vacuum Oil Company the Cameron Meadows lease for the entirety of the lands covered thereby. The instrument contained an obligation on the part of Vacuum to pay Henshaw an overriding royalty on oil or gas produced from the lease premises. The instrument required Vacuum to perform the terms of the original Cameron Meadows lease. This instrument did not authorize Vacuum to release any portion of the leased premises.
Oil and Gas were discovered on the leased premises by Vacuum in October of 1931, and have been continuously produced from the leased premises ever since.
By mesne conveyances Mobil and Exxon succeeded to the interest of Vacuum in the leased premises in the proportion of one-half each with Mobil being the operator.
Two of the Defendants, Harold M. Henshaw and Ashbel B. Henshaw, acquired the leasehold interest of H. M. Henshaw by inheritance. All other Defendants, with the exceptions of Mobil and Exxon, are owners of overriding royalty interests which were acquired through mesne conveyances.[1]
By instrument dated April 5, 1951, by and between Mobil, (then Magnolia Petroleum Company), Exxon (then Humble Oil and Refinery (sic) Company), and Cameron Meadows, it was agreed that the royalty payable on gas produced from the leased premises would be 7/64 of the gas sold as opposed to the $200.00 per year per well provided in the original Cameron Meadows lease. Neither Henshaw, as lessee, nor any of the Defendants herein signed this agreement. Similarly, by instrument dated January 5, 1952, between Cameron Meadows, Magnolia and Humble, it was agreed that the royalty payable to sulphur should be $2.00 per ton as opposed to .50 cents per ton provided in the original Cameron Meadows lease. Again, neither Henshaw nor any of the Defendants herein executed that instrument. In both of the instruments Cameron Meadows acknowledged that the original Cameron Meadows lease was in full force and effect according to its terms.
By instrument executed in various counterparts during 1957 and 1958, the *196 parties having an interest in the leased premises authorized Magnolia as operator to measure and allocate production from wells on the leased premises by use of "well test" in lieu of "gauge tanks". Cameron Meadows asserts that the instrument contains an acknowledgment of "ownership" of the Cameron Meadows lease in Magnolia and Humble. The purpose of the instrument was to authorize a different method of measuring production (as required by state-wide order 29-d of the Department of Conservation).
Cameron Meadows at various times since 1935 made demands upon Mobil and Exxon for further development of the leased premises. No demand has ever been made upon Henshaw or any other defendants for development of the property.
From 1971 through 1973 Mobil and Exxon executed three releases covering the leased premises:
1. By instrument dated January 22, 1971, Mobil executed a release of the following described properties:
'All of Sections 19 and 20; all of Section 22 below the depth of 8,341 feet; all of Section 23; the West Half of Sections 24, 25, and 26; all of Sections 29, 30, 31 and 32, Township 14 South, Range 13 West, La. Mer., Cameron Parish, Louisiana.'
This release executed by Mobil does not purport to release the Cameron Meadows lease itself, but rather releases only the right, title and interest of Mobil in the Cameron Meadows lease. The language of the instrument specifically provides as follows:
'All it's (Mobil's) right, title and interest in and to that certain oil and gas mining lease dated March 21, 1927, executed by the said Cameron Meadows Land Company as lessors to H. M. Henshaw as lessee, of record in Conveyance Book 9, page 122, records of Cameron Parish, Louisiana, insofar as said lease covers and includes its interest in an to the following described lands . . . `
2. By instrument dated March 26, 1971, Humble similarly surrendered its interest in part of the disputed acreage under the Cameron Meadows lease. The pertinent language of the Humble release is as follows:
'KNOW ALL MEN BY THESE PRESENTS, that Humble Oil & Refining Company does hereby release, relinquish, surrender, and abandon all of its right, title and interest in and to that certain oil, gas and mineral lease dated the 21st day of March, 1927, executed by Cameron Meadows Land Company, as lessor, to H. M. Henshaw, as lessee,. . . .'
The properties covered by the Humble release were described as follows:
'All of Sections 19, 20 and 23; West Half of Sections 24, 25 and 26; all of Sections 29, 30, 31 and 32, in Township 14 South, Range 13 West, La. Mer., Cameron Parish, Louisiana. Fractional North Half of Section 5; NE/4, E/2 of NW/4 and NW/4 of NW/4 of Section 6, Township 15 South, Range 13 West, La. Mer., Cameron Parish, Louisiana, containing 6024 acres.'
3. Finally, by instrument executed February 23, 1973, Exxon released its interest in the Cameron Meadows lease insofar as the lease covered Section 22, Township 14 South, Range 13 West below the depth of 8,341 feet.
The properties described in these three releases are the properties in dispute.
Prior to execution of the releases by Mobil and Exxon, Defendant Harold Henshaw, through his attorney, James A. Smith, wrote Mobil concerning the transaction. By letter dated January 13, 1971, James wrote Mobil concerning the proposed releases and received a response from Mobil dated January 21, 1971, in which Mobil stated that the proposed release of Mobil `will only cover Mobil's undivided half interest' and that Mobil understood that Humble would also be releasing its interest. By letter dated February 27, 1972, Harold Henshaw personally wrote Humble concerning the *197 Cameron Meadows lease and his desire to protect his royalty interest. Humble did not respond to Mr. Henshaw's letter. Harold M. Henshaw, again on February 13, 1975, wrote a letter to Mobil concerning the acreage Mobil had released and referred therein to his `losing royalty on some 6,600 acres, when this was turned back to Cameron Meadows Company.'
Since the releases of the acreage involved in this suit, Cameron Meadows Land Company has executed nine leases covering portions of the released acreage. Each of these leases has expired, and there has never been any production on the released acreage, the property in dispute."
We also think it important to include as specific facts of this case, pertinent quoted language of the transfer of April 1, 1927 from Henshaw to Vacuum Oil Company, as follows:
"NOW THEREFORE, KNOW ALL MEN BY THESE PRESENTS: That I, H. M. Henshaw of Calcasieu Parish, Louisiana, in consideration of the sum of $17,310.00 cash to me in hand paid by Vacuum Oil Company, receipt of which is hereby acknowledged, have granted, sold, transferred and assigned, and do hereby grant, sell, transfer and assign unto said VACUUM OIL COMPANY, a corporation, the oil and mineral lease above mentioned, together with all leasehold and other rights, titles and interest that I have in and to said land by virtue of said lease and all rights, titles and interest purported to be created thereby, and so far as it covers all of the lands above described.
TO HAVE AND TO HOLD unto the said VACUUM OIL COMPANY, its successors and assigns, forever, in accordance with the terms and provisions of said lease. And I do hereby authorize Vacuum Oil Company, its successors and assigns, should they at their election choose to do so, to pay all rentals provided for in the lease above mentioned, and I for myself, my heirs and assigns, agree to reimburse the party so paying for rentals paid by him proportioned to the interest now retained by me, with interest amounts to . . . acres hereby granting unto him a lien on the interest now retained by me to secure his reimbursement for rental so paid.
Grantee shall never be under any obligation to drill wells for petroleum oil or gas on any of the property covered by said leases, except as required by the terms thereof, but should it drill on any portion of said described premises hereby assigned and produce therefrom petroleum oil or gas in paying quantities, it shall deliver as royalty, to grantor the proportion of oil or gas saved from that produced, as hereinafter provided, such delivery to be made into tanks by grantor provided, with connections by grantor provided, or into any pipe line connected with the well, after first having deducted oil or gas used as provided in said leases." (Emphasis added)
We specifically note at this point that the transfer by its terms conveys all interest of the transferor in the lease save his retention of an overriding royalty interest. Additionally, we note that the transferor did not retain a right of reversion; no control whatever over the manner in which the transferee was to conduct operations under the lease; and, the transferee was under no obligation whatever to maintain the lease in force and effect by the payment of rentals or by conducting operations in search of minerals.
In considering the issues presented the trial court first considered the nature or character of the instrument dated April 1, 1927, and concluded that the transfer was a "Sublease" as opposed to an "Assignment". In so concluding, he stated as follows:
"This question is of primary importance because if the instrument was an `assignment', Mobil and Exxon would have owned the lease, and the instruments executed by them would have resulted in the effective release to Cameron Meadows of the lease over the acreage described therein.

*198 The decisions of the Louisiana Supreme Court beginning in 1928 firmly establish that a conveyance by the lessee of a mineral lease containing an obligation to pay such lessee an excess royalty or overriding royalty is a sublease and not an assignment. This position holds true regardless of the language employed and has even been applied to circumstances where the reservation of the overriding royalty was contained in a separate instrument. The principle is recognized by law review commentators and by the redactors of the Louisiana Mineral Code."
We have no quarrel with the trial judge in his finding that the transfer was a sublease. He followed the jurisprudence on this subject beginning with Smith v. Sun Oil Company, 165 La. 907, 116 So. 379 (1928). See also Johnson v. Moody, 168 La. 799, 123 So. 330 (1929); Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46 (1931); Bond v. Midstates Oil Corporation, 219 La. 415, 53 So.2d 149 (1951); Prestridge v. Humble Oil & Refining Co., 131 So.2d 810 (La.App., 1961); Broussard v. Hassie Hunt Trust, 231 La. 474, 91 So.2d 762 (1956); Scurlock Oil Company v. Getty Oil Company, 294 So.2d 810 (La., 1974); Parten v. Webb, 205 La. 799, 18 So.2d 198 (1944); Tomlinson v. Thurmon, 189 La. 959, 181 So. 458 (1938); Serio v. Chadwick, 66 So.2d 9 (La.App.2nd Cir. 1953); and Pepper v. Pyramid Oil & Gas Corporation, 287 So.2d 620 (La.App.3rd Cir. 1973); Iberian Oil Corporation v. Texas Crude Oil Company, 212 F.Supp. 941 (W.D.La.1963) and the pertinent comment under Louisiana R.S. 31:127:
"It is not required, however, that there be a retention of any right of reversion or of any right of control on the part of the transferor over the operations of the transferee. It is necessary only that the lessee retain some interest which runs for the life of the lease, such as an overriding royalty or a perpetual or unlimited net profits interest. . . ."
By mere definition taken from the jurisprudence the transfer from Henshaw to Vacuum was clearly a sublease and we therefore agree with the trial judge in this respect. Be that as it may, it should be remembered that this decision took place prior to the Smith v. Sun Oil Company decision at a time when neither party to the instrument could have anticipated the vexing problems which might arise as a result of the instrument of transfer being characterized as a sublease as opposed to an assignment.
The trial court next considered the effect of the releases executed by Mobil and Exxon in favor of Cameron Meadows in light of his previous conclusion that the April 1927 transfer was one of sublease and determined that the Sublessees were without right to grant such releases and therefore such releases were of no force and effect except insofar as they operated to re-invest the ownership of the lease in the heirs of H. M. Henshaw. In this conclusion we think the trial court erred as we construe the 1927 sublease as impliedly granting to the Sub-lessee the right, power and authority to release all or any part of the leased acreage.
H. M. Henshaw granted, sold, transferred and assigned unto Vacuum Oil Company, the lease, together with all leasehold and other rights, titles and interests that he had in and to said land by virtue of said lease and all rights, titles and interest purported to be created thereby, insofar as it covered all of the lands therein described. Henshaw retained no rights whatever under said lease except the right to participate in production from said land to the extent of 11/192nd if and when production was had from all or some part of the leased acreage.
As previously indicated, there was no obligation on the part of Vacuum, its successors or assigns, to pay rentals or to develop the leased acreage. Henshaw retained no right to control the manner in which the Sub-lessee would conduct operations under the lease. Most important the Sub-lessor did not reserve any right to a re-assignment of the lease in the event the Sub-lessee determined not to continue the lease in effect as to all or any part of the leased acreage. Additionally, the record clearly reflects that H. M. Henshaw and his heirs from April of 1927 until January of 1971, a *199 period of over 43 years, took no active interest in the lease or the operations being conducted on the leased acreage by the Sub-lessees but rather were content to sit back and merely collect the royalties accruing under the sublease agreement. During this 43 year period the original lessor dealt directly with the Sub-lessees, without objection from Henshaw. Numerous demands were made by the lessor on Mobil and Exxon for further development which resulted in the drilling of additional wells, some of which were productive and some of which were dry. It was only after formal demand by Cameron Meadows that Mobil and Exxon develop further, release or suffer a suit for cancellation, that the releases were executed, the execution of which releases removed the threat of cancellation as to the leased acreage which had been previously developed. Only at this point did the Henshaws resume an active interest in the lease contending that the releases were ineffective and served simply to re-invest them with all leasehold rights.
Considering all of the above; the plain and explicit provisions of the sublease agreement; and, the fact that it was executed prior to the decision of our Supreme Court in Smith v. Sun Oil Company, supra, we conclude that it was clearly the intention of the parties to the sublease agreement that the Sub-lessee, and its successors or assigns, had the right to grant an effective release of said lease covering all or any part of the acreage covered thereby.
We acknowledge the force of the trial court's conclusion that under ordinary circumstances a Sub-lessee has no authority to grant a release of the original lease, such right being reserved to the original lessee. However, this proposition does not and should not hold true in instances where the sublease agreement grants such right to release either expressly or impliedly to the Sub-lessee. We construe the 1927 sublease agreement, in light of its provisions and the actions of the parties thereunder for a period in excess of 43 years, and conclude that it was clearly the intention of the parties thereto that the Sub-lessee, its successors or assigns, was granted the right thereunder to effectively release all or any part of the leased acreage. Scurlock Oil Corporation v. Getty Oil Company, 294 So.2d 810 (La.1974). To decide otherwise would lead to an absurd result which the original parties to the sublease agreement obviously never intended. As aptly noted in an article appearing at 35 Louisiana Law Review, Volume 2, page 347:
"To imagine that a lease brokerage firm which had retained a small override, thus making an `assignment' a sublease, had thereby retained the power to destroy the sub-lessee's investment, is to imagine unconscionable results ordinary people could never understand . . ."
For the foregoing reasons we conclude that the releases executed by Mobil and Exxon, as successors of Vacuum, were valid and effectively operated to cancel the March 1927 lease insofar as said lease covers and affects the acreage described in such partial releases. Able counsel for appellees argue that the language of the instruments of partial release is such that the instruments do not purport to release the lease itself or the rights of others thereunder but only the interest of Mobil and Exxon. The trial court so found. We disagree. On the date the acts of partial release were executed the Sub-lessees owned the entire lease, with all attendant rights, duties and obligations subject only to the payment of an overriding royalty to Henshaw, his heirs or assigns. As we previously concluded, one of the rights owned by Mobil-Exxon was the sole right and authority to grant a release of all or any part of the leased acreage. Obviously it was the clear intention on the part of Mobil-Exxon to grant and that of Cameron Meadows to accept a full release of the leased acreage therein described. The intention of the parties to a contract should be determined from the contract as a whole and not from the literal use of one particular word in the contract. R.C.C. Article 1950; Molero v. California Company, 145 So.2d 602 (La.App. 4th Cir. 1962); Dockson Gas Company v. S. & W. Construction Co., 12 So.2d 847 (La.App.2nd Cir. 1943).
*200 Having concluded that the releases executed by Mobil and Exxon effectively terminated the March 1927 Cameron Meadows lease as to the acreage described therein it necessarily follows that the overriding royalty interests, insofar as this acreage is concerned, owned by the Henshaw heirs and the other defendants likewise terminated. An overriding royalty interest is an appendage of the working interest and dependent upon it. Fontenot v. Sun Oil Co., 257 La. 642, 243 So.2d 783 (La.1971); Arkansas Fuel Oil Co. v. Gary, 227 La. 524, 79 So.2d 869 (La.1955); LSA-R.S. 31:126.
Because of our holding as set out above, we do not reach the alternative contentions advanced by Cameron Meadows and Mobil.
For the above and foregoing reasons, we affirm that part of the judgment of the trial court declaring this suit a class action and awarding H. Ward Fontenot $500.00 as attorney's fees for representing certain absentee defendants. In all other respects the judgment of the trial court is reversed and accordingly, it is ordered, adjudged and decreed that all defendants herein have no rights, title or interest in the Cameron Meadow lease to H. M. Henshaw, dated March 21, 1927, or any overriding royalties thereunder in the acreage released which is described as follows, to-wit:
"All of Sections 19, 20 and 23; all of Section 22 below the depth of 8,341 feet; W/2 of Sections 24, 25 and 26, and all of Sections 29, 30, 31 and 32, Township 14 South, Range 13 West, La. Mer. Fractional N/2 of Section 5; NE/4, E/2 of NW/4 and NW/4 of NW/4 of Section 6, Township 15 South, Range 13 West, La. Mer. Cameron Parish, Louisiana."
All costs are assessed to the heirs of H. M. Henshaw.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] The other defendant overriding royalty owners acquired their interest from H. M. Henshaw.