SAVOY, Judge.
This is a suit by Esther Leger, plaintiff, for damages received as a result of personal injuries received in an automobile accident which occurred on November 25, 1965, near Tallulah, Louisiana. Plaintiff, a young married woman, living separate and apart from her husband, was a guest passenger in a truck driven by Austin Harris, which collided with a Plymouth automobile owned by W. S. Lisonbee, driven by his minor son, Johnnie Lisonbee, with his father’s consent.
The plaintiff filed suit against Austin Harris, Hardware Mutual Insurance Company, liability insurer of the Harris truck, W. S. Lisonbee, and Southern Farm Bureau Insurance Company, liability insurer of the Lisonbee car. Johnnie Lisonbee was named as defendant in the prayer of plaintiff’s petition, but was not named as a defendant in the body of the petition and was not issued a citation. The trial court held that he was, therefore, not a party to the suit.
By supplemental petition, W. S. Howell, agent of Southern Farm Bureau, was joined as a defendant.
Defendant Southern Farm filed a motion for summary judgment based on the allegation that Southern Farm had no policy of liability insurance in effect on the Lisonbee vehicle at the time of the accident, that the policy coverage had expired on November 10, 1965, whereas the accident occurred on November 25, 1965. It also filed an answer of general denial and affirmative allegations pleading the lapse of the policy. The court denied the motion for summary judgment. Answers of general denial were also filed by Austin Harris, Hardware, W. S. Lisonbee, and W. S. Howell.
Prior to filing an answer, W. S. Lisonbee filed exceptions of jurisdiction, improper cumulation of actions, and misjoinder of parties defendant. The trial court ruled that by answering on the merits, after the exceptions were filed, he waived his rights thereunder.
Following trial on the merits, judgment was rendered in favor of plaintiff, Esther Leger, and against W. S. Lisonbee and Southern Farm Bureau Insurance Company, in solido, in the sum of $10,000.00 with legal interest and costs, and $50.00 expert witness fees for the doctors who testified by deposition or otherwise, and taxed as costs.
The demands of the plaintiff against Hardware Mutual and Austin Harris were denied by the trial court.
A suspensive and devolutive appeal was taken by Southern Farm Bureau. W. *565 S. Lisonbee did not appeal, therefore, the trial court judgment has become final as to him.
The sole question presented for review by this Court is whether or not the policy of insurance issued by Southern Farm Bureau Insurance Company to W. S. Lison-bee covering the vehicle in question was in full force and effect at the time of the accident.
Appellant contends that there can be no liability on its part because there was no policy in force and effect on the Lisonbee vehicle at the time of the accident.
The evidence reveals that Southern Farm Bureau issued a policy of liability insurance number L862032, to W. S. Lisonbee, copy of which is in evidence. The policy which covered the automobile involved in this accident was issued for a period from “05/10/65 to 11/10/65 12:01 A.M. * * * and for such terms of six calendar months each thereafter as the required renewal premium is paid by the insured on or before the expiration of the current term.” Mr. Howell, insurance agent for Southern Farm, testified that a form notice was sent to the insured before November 10, 1965, advising him of the premium due on that date. There is no copy of the notice in the record. Appellant alleges a company policy to accept premiums paid within ten days after same are due, and the policy will be reinstated. The company also alleges that it mailed Mr. Lisonbee a formal notice of policy lapse on November 22, 1965. Although there is no copy of such notice in the record, Mr. Lisonbee admitted receiving this notice on November 29, 1965. The accident occurred on November 25, 1965. Southern Farm Bureau’s agent, Mr. Howell, testified that Mrs. Lisonbee came to his office on November 26, 1965, to report the accident and pay her premium. He made out the check for her, dated it November 24, 1965, by error, accepted the check for payment of the premium and mailed it to the Baton Rouge office where it was cashed by the company. The canceled check is in the suit record.
In its brief to this Court, appellant relies exclusively on the recent case of Borne v. Dillon (La.App., 4 Cir., 1967), 201 So.2d 115, which counsel argues is on all fours with the instant case. It appears that the policy of insurance issued in that case was the same type of-policy as was issued in the instant case and contained similar language. Just as in the Borne case, supra, unlike the more usual automobile liability policy issued for a term of one year, at the end of which a new policy is written, in the instant case the policy was issued for a six-month term and is retained by the insured and is effective as long as the renewal premium is timely paid. Premium notices are mailed regularly to the policyholder in advance of the date the, premium is due and the insured is given a grace period of ten days to make payment. If the premium is not paid by the end of the grace period, a notice of lapse of policy is mailed to the policyholder. If the premium is received by the company within ten days of the due date, the policy is automatically reinstated so as to provide continuous protection. Mr. Lisonbee had been with the company as an insured for many years and his checks or payments had been accepted before after due date as was done this time.
We believe the trial court was correct in concluding that there was no automatic cancellation after the due date. If there was, then why did the company mail a lapse notice to Lisonbee on November 22, 1965, two days after the ten-dáy grace period (which Lisonbee did not receive until November 29) ? Paragraph 16 of the policy provides that the “policy may be canceled by the company by mailing to the insured * * * written notice stating when not less than ten days thereafter such cancellation shall be effective.” LSA-R.S. 22:636 provides that insurance policies may be canceled by the insurer mailing notice of cancellation to the insured, and cancellation becomes effective five days thereafter. The company *566 stated it mailed notice on November 22; the accident occurred on November 25.
We agree with the trial court that the policy here had not been canceled and had not lapsed at the time of the accident.
In the Borne case, supra, premium and expiration notices were mailed by the insurer and the policy was effectively canceled after the required delay. ’ Several months thereafter the accident occurred, and more than a month after the accident, payment was sent to the company. A local agent was then sent to investigate the risk and to get a neiv application signed, with coverage being provided from the date of the receipt of the check, under a new policy number. In the instant case there was no effective cancellation; no new application was requested; the policy was simply reinstated upon receipt of payment, as had been done in the past, thus providing continuous coverage.
The burden of proof to show cancellation of an insurance policy is upon the insurer. Alexander v. State Farm Mutual Automobile Ins. Co. (La.App., 1 Cir., 1962), 148 So.2d 898; Townzen v. Allstate Insurance Company (La.App., 3 Cir., 1966), 188 So.2d 474; Thibeau v. LeBlanc (La.App., 1 Cir., 1967), 198 So.2d 707. This burden has not been met by Southern Farm Bureau Insurance Company.
The district court awarded plaintiff the sum of $10,000.00 for special and general damages. In his brief and in argument before this Court, counsel for appellants contends that the award of the district court should be reduced to the sum of $2,500.00. After examining the record, we are in accord with the trial judge that the award of $10,000.00 is fully justified. Plaintiff, who was working as a waitress, suffered a head injury, a concussion, a comminuted fracture of the collar bone, and fractures of both knees. She was hospitalized twice and underwent surgery for the fractured knee. She wore a leg cast for about five months and then a cylinder cast for another two months. Osteoporosis developed in the right knee, and there was a probability that traumatic arthritis would also develop. Dr. Paul M. Davis, an orthopedic specialist, estimated she would have 20% impairment of use of the right leg as a whole because of this knee injury. The medical expenses totaled about $1,000.00, and she had loss of wages, both past and future. All of this is included in the $10,000.00 award. Hence, the award is clearly not excessive and is well within the discretion of the trial judge.
For the reasons assigned, the judgment of the district court is affirmed at appellants’ costs.
Affirmed.