491 So.2d 489 (1986)
Morris LEVINE, et al., Plaintiffs-Appellants,
v.
LIVE OAK MASONIC HOUSING, INC., et al., Defendants-Appellees.
No. 85-621.
Court of Appeal of Louisiana, Third Circuit.
July 9, 1986.
Writ Denied October 17, 1986.
*490 Gordon Sandoz, Abbeville, for plaintiffs-appellants.
Cooper, Ortego & Woodruff, Calvin Woodruff, Jr. Abbeville, Allen, Gooch, Sera H. Russell, III, Lafayette, J. Burton Willis, St. Martinville, Jo Ann Nixon, Lafayette, for defendants-appellees.
Before GUIDRY, J., TUCK and PICKETT, JJ. Pro Tem.[*]
*491 JOHN S. PICKETT, Jr., Judge Pro Tem.
On or about July 3, 1981, an apartment complex located at 1610 Lampman Street, in the City of Abbeville, Louisiana, owned by Live Oak Masonic Housing, Inc., was virtually destroyed by fire.
Two individuals perished in, or as a result of, the fire, namely, Mrs. Linda Johnlouis Levine, and her infant child, Jamaal Levine. Mrs. Linda Levine experienced third degree burns over approximately 85 to 90 percent of her body, and died ten (10) days thereafter, at the burn unit of Charity Hospital in New Orleans. Jamaal Levine, who was about three months old, perished at the scene.
The fire started in apartment 107, which was occupied by two sisters, Angela Woods and Lonna Dozier, and which was adjacent to apartment 105, occupied by Mrs. Linda Levine, and her two children, Marlinda Levine, approximately five years of age, and Jamaal, about three months old.
The origin of the fire was a defective electrical cord on a window air conditioner owned by Angela Woods and Lonna Dozier, and which had been installed by them in a window of apartment No. 107. The air conditioner had been purchased by them from Samuel Greene, a student at the Gulf Area Vocational Technical School, of Abbeville. Mr. Greene was a student in a vo-tech class at Gulf Area in a class entitled "Airconditioning, Refrigeration and Home Appliance Repair".
As a result of the fire, Morris Levine, the legal husband of Mrs. Linda Levine, brought suit against Live Oak Masonic Housing, Inc., its insurer, Holland America Insurance Company, State of Louisiana through the Gulf Area Vocational Technical School, Alvin Guidry, Samuel Greene, Cheryl Bessard, Angela Woods, and Lonna Dozier. This suit was brought by Mr. Levine individually, for the loss of his wife and son, for Mrs. Linda Levine's survival action and on behalf of Marlinda for the loss of her mother and for Linda's loss of Jamaal, which Marlinda inherited from her mother. This suit was assigned docket number 82-43695"C", our docket number 85-621.
Live Oak Masonic Housing, Inc. and Holland America Insurance Company, Inc., the liability and comprehensive insurer of Live Oak, instituted suit against Vo-Tech, Woods, Guidry, Bessard, Greene, and Dozier, claiming its subrogated property damage claim in the amount of $200,030.20. This suit was assigned docket number 82-44733"D", our docket number 85-622.
These two cases were consolidated. The cases remain consolidated on appeal. We decide all issues presented in both cases in this opinion but render a separate decree in "Live Oak Masonic Housing, Inc., et al v. Alvin Guidry, et al," 491 So.2d 496. (La. App. 3rd Cir., 1986).
In the case of "Morris Levine, et al v. Live Oak Masonic Housing, Inc., et al", at the conclusion of the trial, the trial court granted judgment in favor of Morris Levine and the minor, Marlinda Levine, and against defendants, Angela Woods, Lonna Dozier and Samuel Greene, jointly and in solido, in the total sum of $178,049.30. All other defendants were found to be without liability and were dismissed.
Morris Levine individually and on behalf of the minor, Marlinda Levine, appealed and assigned errors. These assignments of errors will be considered at a later point in this opinion.
Defendants Angela Woods, Lonna Dozier and Samuel Greene, did not appeal, and, therefore, as to them, the judgment rendered by the trial court is final. Leger v. Lisonbee, 207 So.2d 563 (La.App. 3rd Cir., 1968).
In the case of "Live Oak Masonic Housing, Inc., et al v. Alvin Guidry, et al," defense counsel agreed to sever all defendants except Gulf Vo-Tech School. The court granted judgment in favor of defendant, Gulf Area Vocational Technical School, and against plaintiffs, Live Oak Masonic Housing, Inc. and its insurer, Holland *492 America Insurance Company, Inc., dismissing their suit.
Live Oak Masonic Housing, Inc. and Holland America Insurance Company, Inc., appealed, and assigned errors. These assignments of error will be considered at a later point in this opinion.
The trial of the case established the following facts:
At all pertinent times two sisters, Angela Woods and Lonna Dozier, resided together in apartment 107 of an apartment complex in Abbeville, known as Live Oak Manor, and owned and managed by Live Oak Masonic Housing, Inc., (Live Oak), and insured by Holland America Insurance Company, Inc., (Holland America).
When Ms. Woods and Lonna Dozier first rented apartment 107 it was not air conditioned. They had heard that reconditioned air conditioning units could be purchased at Gulf Area Vocational Technical School (Vo-Tech) in Abbeville and they went to the school for the purpose of purchasing a unit. Upon arriving at the school they were directed to the shop area where they encountered a student, Alvin Guidry, who was known to them. They asked him about buying an air conditioner. Mr. Guidry advised them that he did not have one at the time and directed them to another student, Samuel Greene, who sold them a unit which he had been working on. Both Guidry and Greene were taking a course in air conditioning at the time, and worked on air conditioning units as part of the course project. The school did not furnish these units. They were either brought to the school by individual students, or donated by other persons. In any event, the unit in question belonged to Mr. Greene, individually, and he sold it to the sisters there at the door of the school shop. During their lunch hour, on that same date, Messrs. Guidry and Greene delivered the unit to apartment 107 at Live Oak and installed it in a window of the apartment. They did not plug it into the electrical outlet. At the time it was installed the electrical cord of the unit had been spliced and taped.
The air conditioning unit apparently performed satisfactorily for several months before any repairs were done on it, and then only minor repairs were necessary. These repairs were performed by Messrs. Guidry and Greene, and possibly other students, and there is no evidence that these repairs were related to the spliced electrical cord.
On the night of July 2, and early morning hours of July 3, 1981, apartment 107 was occupied not only by Ms. Woods and Ms. Dozier, but by their sister, Cheryl Bessard, who was sleeping on a mattress on the floor of said apartment, and by several of their children who were also sleeping in the apartment.
At approximately 7:00 o'clock A.M., July 3, 1981, Ms. Bessard became aware that smoke was emanating from an area behind the sofa where the receptacle for the air conditioning unit was located. Shortly thereafter the sofa and some drapes in the vicinity caught fire. Ms. Bessard became excited and called her two sisters, and together they pushed the sofa outside the apartment onto a common second story landing which formed the entrance way for apartment 107 and three other similar apartments. Shortly thereafter, the Abbeville Fire Department was called.
Ms. Bessard then went to each of the other three apartments and attempted to warn the occupants of the fire, which by this time was spreading rapidly. In her efforts to warn the occupants of adjoining apartment 105, she shouted numerous warnings and pounded on the door repeatedly, but received no response. At some point, possibly as a result of Ms. Bessard's efforts, Mrs. Linda Levine took Marlinda to safety. Upon returning to get the baby, Jamaal, she apparently became entrapped and suffered third degree burns over eighty-five percent of her body. Jamaal perished at the scene, and Mrs. Levine died some ten days later at the burn unit of Charity Hospital in New Orleans, as hereinabove noted.
The issues as raised by the assignments of error in both cases are:
*493 (1) Whether, under the provisions of Louisiana Civil Code Article 2320, Gulf Area Vocational Technical School is liable to Levine, Live Oak, and its insurer, for the spliced electrical cord which was attached to an air conditioning unit sold and installed by one or more of its students;
(2) Whether, under the provisions of Louisiana Civil Code Articles 2315 and 2316, Alvin Guidry is liable for said damages;
(3) Whether, under the provisions of Louisiana Civil Code Article 2315 and 2317, Live Oak Masonic Housing, Inc., and its liability insurer, Holland America Insurance Company, are liable to the Levines for said damages; and,
(4) Whether the awards made by the trial court fell within the limits of discretion afforded by the prevailing jurisprudence pertinent to the losses sustained.

NEGLIGENCE OF THE VO-TECH SCHOOL
At all pertinent times Samuel Greene and Alvin Guidry were students at the Gulf Area Vocational Technical School (hereinafter referred to as the Vo-Tech School) in Abeville. They were enrolled as students in a course of instruction referred to as "Airconditioning, Refrigeration and Home Appliance Repair". The instructor for this class was Mr. Herman B. Torry. The class was an open enrollment class with students enrolling and dropping out at irregular times. During Mr. Torry's tenure as an instructor the enrollment in this class varied from as few as two or three up to as many as twenty-five. Mr. Torry had duties in addition to instructing, which included being responsible for taking care of the 24 airconditioning units of the school, and the paper work related to records on each of his students.
It was a common, accepted practice for students to bring air conditioning units, and other appliances, to school for the purpose of being repaired, thus giving students practical experience in repair work. It was also a common practice for the students to sell these repaired air conditioners, although Mr. Torry testified that he had personally never seen one sold, or money change hands.
The Vo-Tech School had a policy against selling appliances at the school. This policy was made known to the students. If they wanted to sell some repaired item they could take it home and sell it from there, but not from the school.
On the question of the use of spliced electrical cords Mr. Torry gave one instruction, namely, "not to splice one, period." This instruction was repeatedly expressed to the students, and both Samuel Greene and Alvin Guidry knew it well, and so testified.
Nonetheless, the air conditioning unit in question was brought to school by Mr. Greene, belonged to him, was worked on by him, and, to an extent that will be referred to later, by Mr. Guidry, and sold by Mr. Greene, at the Vo-Tech School; and it, in fact, had a defective, i.e., spliced, electric cord.[1]
The question is raised as to whether, under the provisions of Louisiana Civil Code Article 2320, the Vo-Tech School is responsible. Article 2320 provides in pertinent part, as follows:
"...
Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendance.
In the above cases, responsibility only attaches when the masters or employers, teachers, and artisans, might have prevented the act which caused the damage, and have not done it."
*494 In order for an instructor, and hence the school, to be liable under the provisions of Article 2320 it must be established that the instructor, with the exercise of the degree of supervision required under a given set of circumstances, might have prevented the act which caused the damage; that he failed to do so; and that there was a causal connection between the lack of supervision and the accident. Prier v. Horace Mann Insurance Company, 351 So.2d 265 (La.App. 3rd Cir., 1977).
The testimony established that a large part of the instruction was "hands on" i.e., practical work with appliances, with Mr. Torry usually in the shop area where work was being done. It was firmly established that Mr. Torry had repeatedly instructed his students to never splice the electrical cord on an appliance, nor to allow one to remain on an appliance.
At the time of the repair of the air conditioner Messrs. Greene and Guidry had been students at the Vo-Tech School for several months. They were both mature young men, Mr. Greene being 18 years of age and Mr. Guidry being 37 years of age. They should have been able to follow the instructions given them by Mr. Torry without direct supervision. See, Lemelle v. State of Louisiana, 435 So.2d 1162 (La. App. 3rd Cir., 1983). There is no evidence in the record to support a finding of inadequate supervision on the part of Mr. Torry. The trial court so found and we find no clear error in this conclusion. Mr. Torry's repeated instructions to the students was explicit, "do not use spliced electrical cords on appliances". Mr. Torry, and Vo-Tech School, cannot be held responsible when a student (Mr. Greene) deliberately violates a warning against having a spliced cord on an appliance, and a school policy by selling an appliance on the campus, both of which were done without Mr. Torry's knowledge. The unit was taken off campus during a period of time (the lunch hour) when the students were not required to be on campus. Clearly, Mr. Torry was free of negligence. This court finds no clear error in the trial courts determination that there is no liability on the part of the Vo-Tech School resulting from Mr. Torry's conduct.
The court likewise rejects plaintiffs argument that the Vo-Tech School presented itself to the public as a manufacturer, and that the Vo-Tech School is liable as a manufacturer, because of its failure to disclaim the product as its own. See, Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (La.1978) and Medic Production Consultants, Inc. v. Mercedes-Benz of North America, 262 La. 80, 262 So.2d 377 (1972).

NEGLIGENCE OF MR. GUIDRY
The relationship between Mr. Greene and Mr. Guidry was such that it is not practical to discuss whether Mr. Guidry was negligent without also discussing the acts of negligence and liability by Mr. Greene.
It is to be noted that Mr. Greene, the seller of the air conditioner in question, had a responsibility as such.
The responsibility of the seller of a thing is set forth in Article 2476 of the Louisiana Civil Code, as follows:
"The warranty respecting the seller has two objects; the first is the buyers peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibiting vices."
It is well settled in Louisiana jurisprudence that the nonmanufacturer of a defective product is only responsible if he knew, or should have known, that the product was defective. Hudgens v. Interstate Battery Systems of America, Inc., 393 So.2d 940, (La.App. 3rd Cir., 1981); Reeves v. Great Atlantic & Pacific Tea Company, Inc., 370 So.2d 202 (La.App. 3rd Cir., 1979), writ denied. 371 So.2d 835 (La.1979); and Jones v. Employers Mutual Liability Insurance Company, 430 So.2d 357 (La.App. 3rd Cir., 1983).
Mr. Greene personally restored the air conditioner in question to a working condition. With his training and knowledge he should have known that the electrical cord of the air conditioner was spliced, and as such defective, and, in view of the acknowledged repeated warnings of his instructor *495 that electrical cords were never spliced, he knew that spliced electrical cords were unsafe.
Accordingly, these actions on the part of Mr. Greene constituted negligence, with resulting responsibility, under the provisions of Louisiana Civil Code Article 2315 and 2316, which provide, in pertinent part, as follows:
Article 2315:
"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
. . . . .
Article 2316:
"Every person is responsible for the damage he occasions not merely by his act, but by his imprudence, or his want of skill."
Therefore, when Mr. Greene sold a unit which he professed to have repaired and placed in a safe working condition, he breached his duty both as a seller, under Article 2476, and as a repairman under the provisions of Articles 2315 and 2316. Accordingly, Mr. Greene is responsible for the damages resulting from the fire which was caused by and resulted from the fire hereinabove referred to.
The evidence fails to establish that Mr. Alvin Guidry was negligent in any fashion that caused damages to plaintiffs, or that he was in any relationship with plaintiffs that imposed any duty on him toward them.
Mr. Guidry did not know where the air conditioner came from; he did not take it to the school; he did not sell it, and he did not work on the electrical cord. To his best recollection, his only involvement in the entire matter was that he, and some other students, helped Mr. Greene change the fan motor in the air conditioning unit. Later, during the lunch hour, Mr. Guidry went with Mr. Greene and they took the air conditioning unit to the residence of the purchasers, and installed it in a window.
Some five or six months later they returned to the residence (Apt. 107), removed the air conditioner from the window, took it to the school, changed a thermostat, returned it to Apartment 107, and replaced it in the window. That was Mr. Guidry's sole involvement. He was not the seller, and there was no proof of any negligence on his part. All demands against Mr. Guidry were properly rejected.

STRICT LIABILITY
Plaintiffs contend that as owner of the apartment building where the defective air conditioner was located, Live Oak Masonic Housing, Inc., is liable for the damage resulting from the fire. Plaintiffs cites the strict liability provisions of Louisiana Civil Code Article 2317 and 2322 in support of this position.
These articles provide:
Article 2317:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
Article 2322:
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
It is apparent that plaintiffs' position is not valid. In order for strict liability under the provisions of Civil Code Article 2322 to apply the air conditioning unit must be a component part of the building. In this case the unit was entirely portable. It was a window unit and was supported by a brace which fit into the window frame and tightened against the walls of the building with two wide, flat bolts. The unit was then slipped into the frame and plugged in. Neither the unit nor its frame were nailed, screwed, or in any way permanently attached to the building.
In view of the fact that the air conditioning unit was not intended to be permanently attached to the building this case clearly *496 is not controlled by the provisions of Article 2322. See, Olsen v. Shell Oil Company, 365 So.2d 1285 (La.1979), and LaFleurr v. Foret, 213 So.2d 141 (3rd Cir., 1968).
Since the air conditioning unit at no time constituted a part of the building there was no responsibility to plaintiffs on the part of Live Oak Masonic Housing, Inc., nor, as a consequence thereof, on the part of Holland America.

QUANTUM
Plaintiffs-appellants assert that the trial court erred in making an award which falls below the limits of discretion afforded by the prevailing jurisprudence pertinent to the losses sustained.
In the trial court damages were awarded as follows:

In favor of Morris Levine, individually:
(a) For the loss of Linda Levine $15,000.00
(b) For the loss of Jamaal Levine 2,500.00
(c) For the survival action of
 Linda Levine 25,000.00
(d) For funeral and medical
 expenses 5,549.30
 __________
 TOTAL $48,048.30

In favor of Morris Levine, for and on behalf of, the minor, Marlinda Levine:

(a) For the loss of Linda Levine $100,000.00
(b) For the loss of Jamaal Levine 5,000.00
(c) For the survival action of
 Linda Levine 25,000.00
 ___________
 TOTAL $130,000.00

It is well established in the jurisprudence that an award of damages made by the trier of fact will not be disturbed absent a clear abuse of discretion under the particular circumstances of the case. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Jones v. Soileau, 448 So.2d 1268 (La.1984); Broussard v. Peltier, 479 So.2d 679 (La.App. 3rd Cir., 1985); and Franklin v. Oilfield Heavy Haulers, 478 So. 2d 549, 679 (La.App. 3rd Cir., 1985).
All general damage awards have been appealed. No objection was made to the awards for funeral expenses and medical expenses, and therefore they are not at issue.
The award to Morris Levine, individually, of the total sum of $42,500.00, appears low in view of the excruciating pain suffered by Mrs. Linda Levine prior to her death, and her actual death, and the death of Jamaal Levine. However, the trial court found that Mr. Levine had not enjoyed a close relationship with either his wife, Linda, or his legal son, Jamaal, prior to their deaths. Accordingly we do not find the award to be an abuse of the discretion of the trier of fact.
With regard to the award in favor of Morris Levine, for and on behalf of the minor, Marlinda Levine, we have reached the same conclusion. There was evidence that Marlinda was close to her mother and brother, and that they were living together at the time of the incident which resulted in their deaths. The damages awarded are within the range of the discretion of the trier of the fact and will not be reduced or increased.
For these reasons the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
NOTES
[*] Judge Roy B. Tuck, Jr. of the 30th Judicial District Court and Judge John S. Pickett, Jr. of the 11th Judicial District Court participated in this decision as Judges Pro Tempore of the Third Circuit Court of Appeal.
[1] Both Greene and Guidry testified that they did not splice the electric cord on the air conditioner. The trial court found Guidry free from fault. Therefore, of necessity the trial court found that Guidry did not splice the cord. In any event, there is no evidence that the cord was spliced at the Vo-Tech School, or at a time when Greene's work was being supervised by Mr. Torry.