## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-645

**DORE ENERGY CORPORATION**

**VERSUS**

**CARTER-LANGHAM, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-16202
HONORABLE H. WARD FONTENOT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**OSWALD A. DECUIR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, and Oswald A. Decuir and Marc T. Amy, Judges.

**REVERSED AND RENDERED.**

Gladstone N. Jones, III
Eberhard D. Garrison
Kevin E. Huddell
Jones, Swanson, Huddell & Garrison, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, LA 70130
(504) 523-2500
Counsel for Plaintiff/Appellant:
        Dore Energy Corporation

Jennifer Jones
Glenn W. Alexander
Jones & Alexander
P.O. Box 1550
Cameron, LA 70631
(337) 494-5563
Counsel for Plaintiff/Appellant:
        Dore Energy Corporation

**Bernard E. Boudreaux, Jr.**
**Breazeale, Sachse & Wilson, L.L.P.**
**P.O. Box 3197**
**Baton Rouge, LA 70821**
**(225) 387-4000**
**Counsel for Plaintiff/Appellant:**
**Dore Energy Corporation**

**Harry T. Lemmon**
**Attorney at Law**
**650 Poydras Street, Suite 2335**
**New Orleans, LA 70130**
**(504) 581-2155**
**Counsel for Plaintiff/Appellant:**
**Dore Energy Corporation**

**Donald R. Abaunza**
**Joe B. Norman**
**R. Keith Jarrett**
**Joseph I. Giarrusso, III**
**Liskow & Lewis**
**One Shell Square, 50th Floor**
**New Orleans, LA 70139**
**Counsel for Defendant/Appellee:**
**ExxonMobil Oil Corporation**
**Mobil Oil Exploration & Producing Southeast, Inc.**
**Socony Mobil Company, Inc.**
**Magnolia Petroleum Company**

**Patrick W. Gray**
**Amy A. Lee**
**Johnson Gray McNamara**
**P.O. Box 51165**
**Lafayette, LA 70505**
**(337) 412-6003**
**Counsel for Defendant/Appellee:**
**ExxonMobil Oil Corporation**
**Mobil Oil Exploration & Producing Southeast, Inc.**
**Socony Mobil Company, Inc.**
**Magnolia Petroleum Company**

**Lawrence P. Simon, Jr.**
**George E. Arceneaux**
**Liskow & Lewis**
**P.O. Box 52008**
**Lafayette, LA 70505-2008**
**(337) 232-7424**
**Counsel for Defendant/Appellee:**
**ExxonMobil Oil Corporation**
**Mobil Oil Exploration & Producing Southeast, Inc.**
**Socony Mobil Company, Inc.**
**Magnolia Petroleum Company**

**DECUIR, Judge.**

The plaintiff, Doré Energy Corporation, appeals a judgment of the district court granting the defendants' motions for directed verdict and JNOV and dismissing its petition with prejudice. For the following reasons, we reverse.

## FACTS

Doré Energy owns approximately 18,000 acres of land in Cameron Parish. In 1927, Doré's predecessor as owner, Cameron Meadows Land Company (CMLC), granted a mineral lease to H.M. Henshaw (the "Henshaw lease"). Shortly thereafter, Henshaw entered into an agreement styled an assignment of lease whereby he transferred all interest in the lease, with the exception of a small overriding royalty interest, to Vacuum Oil. A series of conveyances followed to various entities, one of which was the defendant, ExxonMobil Oil Corporation (Exxon). Exxon acted as operator of the lease for some twenty-one years. Eventually, Exxon released much of the leased acreage and conveyed other portions prior to Doré's purchase of the property in 1995.

Doré at some point determined that the property was severely damaged by canals and oilfield wastes. Doré instituted this suit against twenty-one corporations and one individual who had "at various times conducted oil and gas exploration and production operations" seeking compensation for the damages caused by defendants. Doré Energy sought general and punitive damages as well as contract damages for the costs associated with cleaning up and restoring the land. Prior to trial, Doré indicated that it had settled with all of the defendants except Exxon Mobil Oil Corporation. Exxon filed exceptions of no right of action and prescription which the trial court deferred to the merits. At the close of trial, Exxon moved for a directed verdict on the issue of prescription and the motion was granted by the trial court. The remaining issues were submitted to the jury which awarded Doré fifty-seven million dollars

($57,000,000.00) in damages. Exxon moved for JNOV, which the trial court granted. Doré lodged this appeal.

## JNOV

Doré contends that the trial court erred in granting the JNOV. Specifically, Doré argues that the trial court incorrectly concluded that the jury erred in awarding contract damages because of a lack of privity between Doré and Exxon. We agree.

In *Moore v. Acadian Ambulance Air Med,* 07-1402, p. 2 (La.App. 3 Cir. 5/28/08), 983 So.2d 989, 991, this court reiterated that in reviewing a trial court's grant of JNOV the Louisiana Supreme Court has consistently phrased the relevant inquiry as:

> [D]o the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.

*Anderson v. New Orleans Public Service, Inc.*, 583 So.2d 829, 832 (La.1991).

The trial court concluded that a reasonable jury could not have concluded that privity of a contract existed between Doré and Exxon because the original transfer between Henshaw and Vacuum Oil was a sublease rather than an assignment, and there is no privity between a lessor and a sub-lessee. *See Smith v. Sun Oil Company*, 165 La. 907, 116 So. 379 (1928). However, as Doré points out, this rule had not been explicitly enunciated at the time the agreement in this case was confected in 1927.

Our inquiry, therefore, must begin with the contract between Henshaw and Vacuum Oil. A lease agreement, like other contracts, is the law between the parties and the courts are bound to interpret them according to the common intent of the

2

parties. La.Civ.Code arts. 1983 and 2045. If the words of the contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine the true intent of the parties. La.Civ.Code art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050. "Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement." *Wright v. 3P Delivery, LLC*, 07-683, p. 3 (La.App. 3 Cir. 10/31/07), 970 So.2d 1171, 1173, *writ denied*, 976 So.2d 718, *quoting Kappa Loyal, L.L.C. v. Plaisance Dragline & Dredging Co., Inc.*, 03-124, p. 7 (La.App. 5 Cir. 6/19/03), 848 So.2d 765, 769, *writ denied*, 03-2348 (La. 12/12/03), 860 So.2d 1154. "In cases in which the contract is ambiguous, the agreement will be construed according to the intent of the parties." *Id.* "Intent is an issue of fact which is to be inferred from all of the surrounding circumstances." *Id.* "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. LSA-C.C. art.2053." *Id.* "Whether a contract is ambiguous or not is a question of law." *Id.* "Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown." *Id.* (Footnote omitted.)

In this case, the initial contract between Henshaw and Vacuum Oil Company (Vacuum) was titled an assignment. The fact that Henshaw maintained an override did not change the parties' intent to assign the lease. The clearest evidence of this is

3

that Vacuum's successors, Magnolia Petroleum Company (Magnolia) and Humble Oil & Refining Company (Humble) entered into agreements to amend the original lease with the original lessor, CMLC. Henshaw was not a party to either of these contracts. In order for the amendment to be valid, Magnolia and Humble had to be assignees of the original lease. Moreover, the April 5, 1951, amendment specifically states: "By virtue of subsequent assignments the above oil and gas lease and all rights thereunder are now owned by Magnolia Petroleum Company and Humble Oil & Refining Company."

This court reached a similar conclusion in *Cameron Meadows Land Co. v. Bullard*, (La.App. 3 Cir. 1977), 348 So.2d 193. The court reviewing the same assignment at issue here concluded that the trial court was correct in characterizing the contract as a sublease under *Smith v. Sun Oil Company* and its progeny. However, the court found that this was no ordinary lease insofar as it conveyed the right for the sublessee to release sections of leased property back to the landowners without the consent of Henshaw. Had the court instead found that (1) the original assignment of lease was unambiguous, or (2) the original agreement between the parties was intended to be an assignment, and (3) the parties for forty-three years treated the agreement as an assignment, and (4) therefore, it was unnecessary to reference the general jurisprudential rule, we would perhaps not be facing the issue once again. Accordingly, we find that reasonable jurors could have concluded the contract at issue in this case is an assignment of lease, despite the reservation of an overriding royalty by Henshaw and, therefore, that privity existed between Exxon and Doré.

The trial court, working from the assumption that the Mineral Code could not be applied retroactively, also concluded that JNOV was required despite the fact that

4

Article 128 provides specifically that "an assignee or sublessee acquires the rights and powers of the lessee and becomes responsible directly to the original lessor for performance of the lessee's obligations." La.R.S. 31:128. The issue of retroactivity with regard to the Mineral Code is not actually that clearly defined. La.R.S. 31:214 provides that the mineral code is applicable to all mineral rights, including those existing on the effective date of the code, but that no provision may be applied to divest already vested rights or to impair contractual obligations. However, the comments to this section state explicitly:

> There are strong reasons why the Mineral Code should be retrospective, at least in the sense that to the extent possible it should apply to existing rights. There are many mineral servitudes, mineral royalties, and mineral leases outstanding at any given point in time. If comprehensive mineral legislation were made applicable only to rights created after its effective date, the number of outstanding rights at that time would assure that there would be two clear and distinct bodies of mineral law in the state for many years to come. One would be the "old law" as developed by analogy to provisions of the Civil Code which would apply to rights already existing on the effective date of the legislation. The other would consist of the Mineral Code and the interpretive jurisprudence applicable to rights created after enactment of the Mineral Code. The resultant difficulties in judicial administration are readily discernible. Additionally, the purpose of codification would be substantially frustrated.

> The chosen approach to this problem is to adopt a general principle making the provisions of the code retrospective in operation to the extent not violative of the state and federal constitutions. Thus, unless an individual can satisfy a court that he is deprived of a vested right without just compensation or that the obligations of a contract are impaired, the rules specified in the Mineral Code apply to both existing and future rights. This approach was regarded as the only practical one.

La.R.S. 31:214. Considering, the language of the Mineral Code and the accompanying comments, the question of retroactive application could turn on the question of whether Exxon had a vested right in the lack of privity defense.

Our jurisprudence has consistently held that the mineral code is applied retroactively where the particular issue has not been resolved to the contrary by

5

pre-code litigation. *Cox v. Sanders*, 421 So.2d 869 (La.1982); *Continental Group, Inc. v. Allison*, 404 So.2d 428 (La.1981). As *Bullard* illustrates, pre-code jurisprudence was not so clearly settled that it vested Exxon with rights that prohibit retroactive application.

Finally, Doré presented the expert opinion of Professor Saul Litvinoff and Exxon countered with the expert opinion of Professor Alain Levasseur regarding whether privity existed or whether Exxon was equitably or judicially estopped from raising the issue. Given that these esteemed scholars differed in their opinions, it is difficult to see how the trial court could find that reasonable jurors could not conclude that privity existed.

After careful review of the record, we find the jury could have reasonably concluded that the actual nature of the contract between Henshaw and Vacuum or the subsequent amendments between Exxon's predecessors and CMLC constituted an assignment of the lease rather than a sublease. Accordingly, given the stringent standard of review enunciated by the Louisiana Supreme Court in *Anderson,* we find the trial court erred in granting JNOV in favor of Exxon.

Because our resolution of the foregoing is dispositive, we pretermit discussion of Doré's remaining assignment. We find further that Exxon has failed to establish solidarity with the settling defendants and, therefore, its assertion that it is entitled to a reduction in judgment has no merit.

**DECREE**

For the foregoing reasons, the judgment of the trial court is reversed and judgment is entered in favor of Doré Energy Corporation and against ExxonMobil Oil Corporation in the amount of fifty-seven million dollars ($57,000,000.00),

6

together with legal interest from the date of judicial demand until paid.  All costs of these proceedings are taxed to Exxon.

**REVERSED AND RENDERED.**