# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-42

**OPELOUSAS GENERAL HOSPITAL AUTHORITY, A PUBLIC TRUST, D/B/A OPELOUSAS GENERAL HEALTH SYSTEM AND ARKLAMISS SURGERY CENTER, L.L.C.**

**VERSUS**

**FAIRPAY SOLUTIONS, INC.**

\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, DOCKET NO. 12-C-1599-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*
**SYLVIA R. COOKS
JUDGE**
\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy Howard Ezell and Van H. Kyzar, Judges.

**AFFIRMED.**

**Darrell W. Cook**
**Stephen W. Davis**
**Darrell W. Cook & Associates**
**6688 N. Central Expressway, Suite 1000**
**Dallas, TX 75206**
**Telephone: (214) 368-4686**
**COUNSEL FOR:**
   **Appellant – Fairpay Solutions, Inc.**

**Gerald A. Melchiode**
**Renee S. Melchiode**
**Melchiode Marx King, LLC**
**639 Loyola Avenue, Suite 2550**
**New Orleans, LA 70113**
**Telephone: (504) 336-2880**
**COUNSEL FOR:**
   **Appellant – Fairpay Solutions, Inc.**

**Thomas A. Filo**
**Somer G. Brown**
**Cox, Cox, Filo, Camel & Wilson, LLC**
**723 Broad Street**
**Lake Charles, LA 70601**
**Telephone: (337) 436-6611**
**COUNSEL FOR:**
> **Appellee – Opelousas General Hospital Authority, A Public Trust, d/b/a Opelousas General Health System and ArkLaMiss Sugery Center, LLC**

**Patrick C. Morrow**
**James P. Ryan**
**Morrow, Morrow, Ryan & Bassett**
**324 West Landry Street**
**Opelousas, LA 70570**
**Telephone: (337) 948-4483**
**COUNSEL FOR:**
> **Appellee – Opelousas General Hospital Authority, A Public Trust, d/b/a Opelousas General Health System and ArkLaMiss Sugery Center, LLC**

**John S. Bradford**
**William B. Monk**
**Stockwell, Sievert, Viccellio, Clements & Shaddock, L.L.P.**
**One Lakeside Plaza, Fourth Floor**
**Lake Charles, LA 70601**
**Telephone: (337) 436-9491**
**COUNSEL FOR:**
> **Appellee – Opelousas General Hospital Authority, A Public Trust, d/b/a Opelousas General Health System and ArkLaMiss Sugery Center, LLC**

**Stephen B. Murray**
**Stephen B. Murray, Jr.**
**Arthur M. Murray**
**Nicole Murray-Ieyoub**
**Murray Law Firm**
**909 Poydras Street**
**New Orleans, LA 70112**
**Telephone: (504) 525-8100**
**COUNSEL FOR:**
> **Appellee – Opelousas General Hospital Authority, A Public Trust, d/b/a Opelousas General Health System and ArkLaMiss Sugery Center, LLC**

**R. Bray Williams**
**Williams Family Law Firm**
**162 Jefferson Street**
**P.O. Box 15**
**Natchitoches, LA 71458-0015**
**Telephone: (318) 352-6695**
**COUNSEL FOR:**
> **Appellee – Opelousas General Hospital Authority, A Public Trust, d/b/a Opelousas General Health System and ArkLaMiss Sugery Center, LLC**

**COOKS, Judge.**

The Defendant in this matter is Mitchell International, Inc. who was the successor by merger to FairPay Solutions, Inc. FairPay is a company that provides a service to insurance providers, essentially processing the bills received by insurance providers from medical providers. FairPay uses computer coding to review all bills for the insurance providers to ensure that everything is paid properly. FairPay contends its process "ensures that its customers avoid making overpayments, or paying duplicative, or double charges included in the bills."

It was asserted by the Plaintiffs, Opelousas General Hospital Authority and a class of numerous Louisiana hospitals and ambulatory surgery centers, that FairPay's recommendations to its insurance providers were too low in cases of workers' compensation claims. The Plaintiffs sued FairPay under the Louisiana Racketeering Act, alleging FairPay had recommended fraudulent reductions to the Plaintiffs outpatient workers' compensation medical bills. FairPay denied that assertion, but did eventually execute a Settlement Agreement between the parties on August 17, 2012. Included in the Settlement Agreement was a reference to the Future FairPay Pricing Methodology (hereafter FFPM), which specifically detailed how FairPay would review bills submitted by Plaintiffs' medical providers in workers' compensation claims. A fairness hearing was held at which the parties agreed the Settlement Agreement was both fair and an accurate depiction of the intent of all parties involved. The trial court approved the Settlement Agreement, and after a competitor appealed, this court affirmed the trial court's final approval. *Opelousas Gen. Hosp. Auth. v. Fairpay Solutions, Inc.*, 13-17 (La.App. 3 Cir. 7/3/13), 118 So.3d 1269.

FairPay asserts the FFPM is intended to govern how it recommends payment to its insurance providers. Plaintiffs maintained the FFPM was non-mandatory, and *could* be utilized prospectively by FairPay and their clients. Plaintiffs

contended the Settlement Agreement did not require FairPay or its clients to use the FFPM, but noted Paragraph 11.5 of the Settlement Agreement clearly provided if FairPay or its clients did not correctly utilize the FFPM, then neither would be provided the protections of the Settlement Agreement.

FairPay maintained it complied with the FFPM in all respects, but in 2013, counsel for Plaintiffs brought to FairPay's attention numerous complaints from class members that FairPay repriced bills were being reimbursed at an amount below the target 72% of billed charges, which was the goal in utilizing the FFPM. In accordance with the Settlement Agreement, Plaintiffs' counsel forwarded the disputed bills to FairPay and waited the requisite thirty days before filing any workers' compensation claims for underpayment.

At the request of Plaintiffs' counsel, FairPay ran yearly reimbursements for Louisiana and discovered the average reimbursements were at 69% of billed charges, rather than the 72% set forth in the Settlement Agreement. FairPay agreed to adjust the 95% multiplier in the FFPM to 98%, thereby increasing the reimbursements due to the Settlement Class.

To attempt to determine how FairPay was repricing its bills, the Plaintiffs sent fifty-three (53) bills to FairPay requesting a full analysis. FairPay complied with this request. The results indicated seventeen (17) of the bills were repriced in accordance with the FFPM, but thirty-six (36) were not. According to Plaintiffs, the thirty-six (36) bills in question contained items that were not paid at all. These non-paid items were primarily comprised of drug and radiology charges.

The Plaintiffs filed a Motion to Enforce Settlement Agreement based on its belief that FairPay had consistently misapplied the agreed upon FFPM, which resulted in improperly reduced payments and/or non-payments for specific billed items. In response, FairPay filed a Motion to Enforce Settlement Agreement for Contempt Citation, Injunctive Relief and Attorneys' Fees. Specifically, Fairpay

2

sought to stay over eighty claims being filed by Plaintiffs in workers' compensation courts in Louisiana. Fairpay contends these claims should have been barred by the Settlement Agreement. The matter proceeded to trial on September 26, 2016.

At trial, FairPay's representative, Amelia Vaughn, acknowledged FairPay was recommending zero payment on the charges in question because they had a "N" status indicator (which was a Medicare edit), and the FFPM was not being applied to these zero payment charges because Fairpay classified them as non-payable under Paragraph 1 of FFPM. Ms. Vaughn testified Medicare had increased the number of its "N" edits. Plaintiffs' counsel countered that the Settlement Class had added language to Paragraph 1 which stated Paragraph 1 was intended to identify improperly coded bills. Ms. Vaughn admitted they made no changes in the computer program to reflect the addition of that language.

Plaintiffs argued at trial that the effect of improperly implementing the "N" status indicator eliminated payment altogether for payable items and resulted in an increasing number of zero payments. Plaintiffs maintained this was a primary reason why the overall reimbursements under the FFPM continued to decline.

Following trial, the trial court took the matter under advisement. In its written reasons for judgment, the trial court noted the purpose of the Settlement Agreement was to benefit both the Settlement Class and FairPay by preventing future disputes or litigation. The trial court noted it was admitted by FairPay that Medicare edits and rules are being performed when the FFPM is applied. The trial court specifically found "the interpretation of how the FFPM is understood to be applied by FairPay is actually not the true intent of what the Plaintiff Class expected in its application to actual bills." The trial court found there was "an error occurring in the performance of the FFPM . . ., regardless of how minor the amount in actual payments that are not being made, and when looked at in totality

3

of what is, there still remains the fact there are improper payments being made by the Defendant." The trial court specifically noted he found nothing to indicate there was any "ill-intent" on FairPay's part for the improper payments, but found the continual decline in reimbursement payments thwarts the true intent of the Settlement Agreement. The trial court concluded these "Medicare edits" were not contemplated by the FFPM or Settlement Agreement, and the inclusion of these edits continuously lowered reimbursements to the Settlement Class despite the Settlement Agreement's stated intent to keep payments static. Therefore, the trial court rendered judgment granting Plaintiff's Motion to Enforce Settlement Agreement. FairPay's Motion to Enforce Settlement Agreement for Contempt Citation, Injunctive Relief and Attorneys Fees was denied.

Acknowledging that the Settlement Agreement does not require FairPay or its clients to use the FFPM for any bills, the trial court entered Judgment tracking the language of the FFPM and Paragraph 11.5 of the Settlement Agreement and ordered that FairPay either:

1. Discontinue applying edits under Paragraph 1 of the Future FairPay Pricing Methodology for correctly coded bills and apply the formula contained in Paragraph 3 for all services where CMS mean cost data is available (and return to utilizing the .95 multiplier contained in the formula), or, in the alternative,

2. Indicate on the explanation of review (EOR's) that the bill is not being repriced utilizing the Future FairPay Pricing Methodology.

This judgment requires FairPay to follow the FFPM or state clearly on the EOR's that they are not using the FFPM.

This appeal followed. FairPay asserts the following assignments of error:

1. The trial court legally erred by altering and amending entire provisions of the Settlement Agreement when: (i) the court made no finding that the Settlement Agreement was ambiguous; (ii) all parties averred that the Settlement Agreement was unambiguous at the hearing; (iii) the court sustained an objection to the parol evidence rule agreeing to stay within the four corners of the Settlement

4

Agreement; and (iv) neither the law nor the evidence support the trial court's actions;

2.     The trial court legally erred by entering a Judgment altering, modifying and completely disregarding material terms of the FFPM of the Settlement Agreement when the appellee had a clear remedy for dispute resolution under the existing terms of the Settlement Agreement, thereby making any need to modify the Settlement Agreement a nullity;

3.     The trial court legally erred by interpreting provisions of the Settlement Agreement in favor of the drafter and against the obligor, in violation of La.Civ.Code art. 2056 and La.Civ.Code art. 2057;

4.     The trial court legally erred by entering Judgment against FairPay when it is impossible for FairPay to perform said Judgment and still comply with the unmodified provisions of the Settlement Agreement;

5.     The trial court legally erred when, after determining that the Settlement Agreement was clear and unambiguous, construed the terms of the Settlement Agreement in a manner that leads to absurd consequences, namely, the elimination of entire contractual provisions contrary to La.Civ.Code art. 2046;

6.     The trial court legally erred by entering Judgment when Plaintiffs failed to offer any evidence to support the relief obtained in the Judgment; or

7.     Alternatively, to assignment of error 6, the trial court manifestly erred when entering Judgment modifying the Settlement Agreement when Plaintiffs failed to meet their burden of proof and failed to offer any evidence regarding the application of the relevant provisions of the Settlement Agreement, specifically the FFPM and Section 11.7 of the Settlement Agreement (dispute resolution procedures) and failed to offer any evidence that the modifications to the Settlement Agreement made by the trial court in its Judgment would actually cure and alleged defects in the FFPM.

## ANALYSIS

### I.     *Standard of Review.*

In this case, the trial court was tasked with interpreting a Settlement Agreement the parties had agreed upon and the trial court had approved. Specifically, the trial court evaluated whether FairPay's payment of bills complied with the provisions of the Settlement Agreement.

Whether the language of a contract is ambiguous is a question of law that subjects the judgment to a de novo standard of review on appeal. *Cluse v. H & E Equip. Servs., Inc.*, 09-574 (La.App. 3 Cir. 3/31/10), 34 So.3d 959, *writ denied*, 10-994 (La. 9/17/10), 45 So.3d 1043. In the interpretation of contracts, the trial court's interpretation of the contract is a finding of fact subject to the manifest error rule. *Dore Energy Corp. v. Carter-Langham, Inc.*, 08-645 (La.App. 3 Cir. 11/5/08), 997 So.2d 826, *writs denied*, 08-2863, 08-2938 (La. 3/13/09), 5 So.3d 118, 119; *Grabert v. Greco*, 95-1781, (La.App. 4 Cir. 2/29/96), 670 So.2d 571. In applying the manifest error rule to the trial court's interpretation, an appellate court may not simply substitute its own view of the evidence for the trial court's view, nor may it disturb the trial court's finding of fact so long as it is reasonable. *Syrie v. Schilhab*, 96-1027 (La. 5/20/97), 693 So.2d 1173. The trial court did not find the Settlement Agreement or the FFPM ambiguous, therefore the manifest error standard of review is applicable to the trial court's interpretation of FairPay's compliance with the Settlement Agreement and the FFPM.

## II. *Assignments of Error.*

In its first assignment of error, FairPay asserts the trial court erred in altering the provisions of the Settlement Agreement. We disagree with the contention that the trial court altered or modified the Settlement Agreement. The trial court in its judgment used the precise wording found in the FFPM and Settlement Agreement. Thus, we find the trial court enforced the Settlement Agreement as written and did not alter in any way what was written by the parties, agreed to by the parties, and approved by the trial court in 2012. The judgment requires FairPay to either follow the FFPM as written, or refrain from claiming on the EOR's that they are following the FFPM.

FairPay also alleges the trial court incorrectly determined the intent of the parties as it relates to Paragraph 1 of the FFPM. However, Paragraph 1 clearly

6

provides the intention of the parties is to identify "improperly coded bills." Thus, the trial court's judgment which orders FairPay to "[d]iscontinue applying edits under Paragraph 1 of the Future FairPay Pricing Methodology for correctly coded bills" enforces the stated intent of the parties. As the Settlement Class notes, where the parties' intent is stated in the contract, courts are bound to uphold this stated intent under La.Civ.Code art. 1971. *Waller Oil Co. v. Brown*, 528 So.2d 584 (La.App. 2 Cir. 1988). This assignment of error lacks merit.

In its second assignment of error, FairPay appears to argue the dispute resolution procedure set forth in Section 11 of the Settlement Agreement precludes the motion filed herein by the Settlement Class. Paragraph 11 requires that on any disputes the Class or Class member send the bill or EOR in question to FairPay for resolution prior to the filing of a 1008 claim form.

Chelle Rankin testified that thirty days prior to the filing of any 1008 claims with the Office of Workers' Compensation, the bills and EOR's in question were sent to FairPay. This testimony was uncontroverted. The trial court accepted this testimony and found there was no violation or breach of the Settlement Agreement by the Settlement Class. Thus, the trial court denied FairPay's motion. We find no error in that ruling.

FairPay's third assignment of error asserts the trial court erred "by interpreting provisions of the Settlement Agreement in favor of the drafter and against the obligor." However, the Settlement Agreement specifically provides in Paragraph 14.7 as follows:

> None of the Parties shall be considered to be the drafter of the Settlement Agreement or any provision hereof for the purpose of any statute, jurisprudential rule, or rule of contractual interpretation or construction that might cause any provision to be construed against the drafter.

7

Therefore, it is clear both parties agreed that neither party will be deemed the drafter of any provision found in the Settlement Agreement. Thus, this assignment of error lacks merit.

In its next assignment of error, FairPay maintains it is "impossible for [FairPay] to perform said Judgment and still comply with the unmodified provisions of the Settlement Agreement." We disagree.

The judgment allows FairPay, if it continues to take discounts not contemplated by the FFPM, to simply '[i]ndicate on the explanation of review (EOR's) that the bill is not being repriced utilizing the [FFPM]." Moreover, the testimony by Angela Vaughn, indicates it was not impossible for FairPay to comply with the judgment rendered by the trial court:

> Q. If these edits are intended to identify improperly coded bills, you can certainly write in a software program – I know you could write it yourself probably, couldn't you? To have it where Paragraph 1 only applies to bills that are improperly coded just like we put in here.
>
> A. So if it's that straight forward, from your perspective –
>
> Q. You could do it.
>
> A. It could be done. . . .

This assignment of error lacks merit.

In its fifth assignment of error, FairPay contends the trial court's interpretation of the FFPM would lead to absurd consequences. We do not agree, and find FairPay's proposed reading of the FFPM would allow it to make no payment whatsoever for properly coded charges. We find this result would lead to absurd results not contemplated or intended by the parties when confecting the Settlement Agreement. The trial court specifically noted at trial, to allow FairPay to interpret the Settlement Agreement as it desires, would result in reimbursements to the Settlement Class below the 72% average which was contemplated by the Settlement Agreement and approved by all parties.

8

FairPay also argues to restrict Paragraph 1 to improperly coded bills would result in certain footnotes to Paragraph 1 being rendered meaningless. As the Settlement Class notes, the footnotes to Paragraph 1 deal with items that are not payable and should not be billed. Thus, if any of these charges were to appear on any bill, it would be improperly coded and subject to being rejected by FairPay. Thus, the footnotes to Paragraph 1 are not rendered meaningless, but simply do not apply to bills that are properly coded and billed. We find no merit in this assignment of error.

In its last two assignments of error, FairPay argues the trial court's granting of the Plaintiffs' Motion to Enforce the Settlement Agreement is based solely on "an equity argument" and Plaintiffs "failed to offer any evidence to support the relief obtained in the Judgment." We disagree.

FairPay argues the testimony of Chelle Rankin, who was an employee in the firm of Plaintiffs' counsel, indicated she was not familiar with how FairPay was repricing its bills. Plaintiffs acknowledged Ms. Rankin was not aware of how FairPay was repricing its bills, because she had no access to FairPay's computer system or code. Plaintiffs maintained Ms. Rankin was called simply to document that the Plaintiffs complied with their obligations under the Settlement Agreement, not necessarily what FairPay did or did not do. This was why Plaintiffs relied on the testimony of FairPay's corporate representative, Amelia Vaughn, who Plaintiffs called to the stand. Ms. Vaughn acknowledged when questioned that the bills in question were not improperly coded, but were instead properly coded bills. She also admitted, even though the wording of Paragraph 1 of the FFPM was changed to add the reference to improperly coded bills, there was no corresponding change made to the computer program to put that charge into effect. The trial court specifically noted this in its reasons for judgment, stating "the formula/code that is embedded in the Methodology pre-existed the document which represents

9

the FFPM, indicative of the fact that any additions made to the FFPM through actual language is nonetheless not reflected in a code change."

Contrary to FairPay's assertion, the Plaintiffs introduced numerous exhibits to establish FairPay was not following the agreed-upon FFPM. In one exhibit involving a FairPay analysis of a bill from Iberia Medical Center, despite three x-rays which totaled $263.21 in costs, FairPay paid only $119.26, which was the mean cost for the emergency room visit. FairPay disallowed the costs of the x-rays by giving it a "N" status indicator and arguing the x-rays were already included in the visit, which it billed for $119.26. Plaintiffs argued, and the trial court agreed, that such absurd repricing was never the agreed upon intent of the FFPM.

We find the Plaintiffs submitted ample evidence to support its position that FairPay's practice of disallowing payments for certain items that were properly billed, coded and payable was not contemplated anywhere in the Settlement Agreement or FFPM, and has resulted in continuously declining reimbursements.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant.

**AFFIRMED.**